**UNITED STATES of America,
Appellee,**

v.

**Allen BAMBERGER et al., Defendants-Appellants.**

Nos. 181, 182, 185, Dockets 71–1520, 71–1521, 71–1530.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1971.

Decided Dec. 10, 1971.

Certiorari Denied April 3, 1972.
See 92 S.Ct. 1326.

Robert Hermann, Robert Kasanof, The Legal Aid Society, New York City, for appellant Bamberger.

David Blackstone, New York City, for appellant Crapps.

Abraham Solomon, New York City, for appellant Simmons.

Gerald A. Feffer, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, William B. Gray, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Appellants were found guilty after a seven-day jury trial before Judge Irving Ben Cooper of the United States District Court for the Southern District of New York of unlawfully, wilfully and knowingly forcibly assaulting, resisting, opposing, impeding, intimidating and interfering with an officer and employee of the Federal Detention Headquarters in Manhattan while he was engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 111 and 2. A fourth defendant, Clifford Northern, was found not guilty. Judge Cooper sentenced Allen Bamberger and Donald Crapps to terms of eighteen months imprisonment, to run consecutively to the federal sentences each is presently serving. Frank Simmons was sentenced to one year imprisonment and has completed serving that term. The three appeal from the judgment of conviction, claiming that the court erroneously defined "forcibly" in his instructions and thereby misled the jury as to one element of the crime. We affirm.

The criminal charges grew out of an incident that occurred in the maximum security section of the Federal Detention Headquarters on West Street in New York City in April, 1970. Four maximum security cell groups are located on one side of the corridor dividing the floor; two large dormitories and a TV room face them across the hall. The government presented its case through the testimony of five correctional officers from the Headquarters. They testified that at about 3:30 in the afternoon of April 2, Officers Leonard Benedetti and Robert Hafer were moving maximum security prisoners back to their cells from the TV room. Simmons, Crapps and Northern were "milling around" in the hall, waiting for Bamberger to return from a visit.[1]

---

1. The day before, an officer had noticed that Bamberger's possessions had been moved from his cell to another without official permission. Bamberger returned his belongings to his cell, and the inmates told the officer that they would move the next day, when he would not be on duty, so as not to disturb him.

Bamberger then appeared at one end of the corridor, outside a locked gate, with an officer and another prisoner. Simmons and Crapps, who had been discussing cell assignments with the guards, refused to go to their cells until Bamberger was let into the hall. Bamberger then allegedly shouted at them to get the keys and make the moves themselves. After Crapps made a "half-hearted attempt" to reach for Officer Benedetti's keys, the officers moved toward the end of the corridor at which Bamberger was not posted. Benedetti left the cell block, but Simmons blocked Hafer's exit and forced the officer against the cell bars. The government witnesses stated that Crapps then jammed a two foot length of broken broom handle, produced from his cell, under Hafer's left arm. He did not injure the guard.

When Hafer refused on request to part with his keys, Simmons removed them from his pocket and gave them to Crapps, who let Bamberger into the hallway. Bamberger unlocked two of the cells, leaving the keys in one lock. Hafer retrieved them and departed. The prisoners all returned to cells, although not necessarily those to which they were assigned. A group of officers arrived and bathed the inmates in Mace or tear gas.

The defense presented five witnesses, all of whom had been inmates in the maximum security section at the detention center on April 2. They testified that nothing out of the ordinary occurred. Inmates were switching cells, as was common practice, and the guards did not object. No prisoner had keys or broomstick handles.[2] No one heard Bamberger shout about the keys. Northern was the only defendant to testify, and his version of events was similar to that of the other defense witnesses.[3]

Judge Cooper delivered a lengthy charge to the jury. In discussing the elements of the crime, he defined "forcibly" as follows:

What does that word "forcibly" mean as used in the statute? It means what is generally accepted as the meaning of that word.

Congress has specifically prescribed force as an essential element of the crime. If there is force, no matter how slight, even touching the hand of a correctional officer, who at the time was engaged in the performance of his duty, and touching him knowingly and wilfully and with the intention to impede, interfere, or, or, or any one of those, that would be sufficient. That slight motion under law is sufficient to meet the statutory term "forcibly."

. . . Even if there were no taking of the key and there was a touching of the person of Hafer, . . . that is a sufficient element of force which the law condemns.

And at another point in the charge he said:

You know the full significance of the old expression "Don't you dare lay a finger on him." That is the type of prohibited behavior contemplated by this statute. This becomes imperative because of the environmental situation generally prevailing in such [penal] institutions.

The defense objected to this portion of the charge, claiming that the court conveyed the impression that mere touching was a talisman for conviction under the statute. They claimed that by stating that a technical assault violated the statute, the court rendered the word "forcible" superfluous.

Section 111 of Title 18, under which appellants were charged, was enacted in

There was testimony that this "milling around" was not unusual activity for the prisoners, particularly the Black Muslims. At this time, half of the inmates on this hall were Muslims.

2. These broomstick handles were not produced at trial.

3. Even the government's rebuttal witness, the prisoner standing with Bamberger outside the gate, testified that he did not hear Bamberger shout to the others.

essentially its present form in 1934. It prohibits forcible assault, resistance, or interference with certain enumerated federal officials, including officers in penal and correctional institutions, engaged in the performance of their official duties. The legislative history of section 111 is sparse, and there is no reference to the intended meaning and scope of its language. See S. Rep. No. 535, 73d Cong., 2d Sess. (1934); H.R. Rep. No. 1455, 73d Cong., 2d Sess. (1934); 78 Cong.Rec. 8126–27 (1934). However, it is a general rule of statutory construction that words in statutes should not be construed as excess verbiage. II Sutherland, Statutory Construction ¶ 4705 (3d Ed. 1943). The word "forcibly" in section 111 ought to limit the proscribed acts to fewer than would fit the definition of the unmodified verbs alone.

Appellants argue first that physical violence or a substantial use of physical force is required to violate the statute. While they may be correct in their contention that most reported cases under this statute do involve a clear use of physical force,[4] they cite no case or authority which holds that the statute is to be applied only when physical force is exerted.

■ Appellants concede, in fact, that the use of force does not necessarily entail physical contact.[5] As a district court stated in a charge approvingly cited by the Fifth Circuit:

Thus a person who, in fact, has the present ability to inflict bodily harm upon another, and wilfully threatens or attempts to inflict bodily harm upon such person, may be found guilty of forcibly assaulting such person. Burke v. United States, 400 F.2d 866, 868 (5 Cir.1968), cert. denied, 395 U. S. 919, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969).

It has been held that the threat must be a present one; in United States v. Glover, 321 F.Supp. 591 (E.D.Ark.1970), an "implied threat of the use of force sometime in the indefinite future" was held not to constitute a violation of section 111. And there must be ability to inflict harm, not merely interference with the performance of a duty. Long v. United States, 199 F.2d 717 (4 Cir. 1952). See District of Columbia v. Little, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950).

Granting that situations in which there is incidental touching or no touching at all can give rise to violations of the statute, appellants claim that the quantum of touching is not the issue which the court ought to have emphasized. Section 111 is not meant to sweep in all harassment of government officials involving "laying a finger" on them. Nor is it used to penalize frustrating an official, without more, even if that action is deliberate. The central issue, which appellants claim the court failed to articulate, is whether the defendants attempted to or did resort to force as a method of persuasion of a federal official.

Five correctional officers testified for the government and five former inmates

---

4. *See, e. g.,* Ladner v. United States, 358 U.S. 169, 87 S.Ct. 233, 17 L.Ed.2d 144 (1958); United States v. Beyer, 426 F.2d 773 (2d Cir. 1970); United States v. Lombardozzi, 335 F.2d 414 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); United States v. Montanaro, 362 F.2d 527 (2d Cir.), cert. denied, 385 U.S. 920, 79 S.Ct. 209, 3 L. Ed.2d 199 (1966); Walks on Top v. United States, 372 F.2d 422 (9 Cir.), cert. denied, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967).

5. Webster's Third International Dictionary defines "forcible" as "effected by force used against opposition or resistance; obtained by compulsion or violence." "Force" is defined, *inter alia,* as "power, violence, compulsion or constraint exerted upon or against a person or thing; strength or power of any degree that is exercised without justification or contrary to law; violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death."

testified for the defense. The issue was solely one of credibility. If the jury believed the officers, the defendants committed acts which would constitute a violation of the statute even under the interpretation which appellants urge. However, the jury might have believed portions of each version. In that instance, the judge's charge on "force," if it were incorrect, might have been prejudicial.

■ We conclude, however, that taken as a whole the charge adequately defined the elements of the crime. The charge included the following language and other statements which conveyed the broad goals of the legislation.

> The purpose of that law is to assure that federal employees, including employees of United States correctional institutions across the country, be able to perform and engage in their official duties unfettered by the use of any force whatever against them. The law recognized the importance of these positions and extends its protection to the persons who occupy them by making it a crime for one to use force to assault or resist  . . . a federal correctional officer.

The court discussed fully the elements that the government had to prove, i. e., that the defendants forcibly assaulted or forcibly resisted, etc.; that Officer Hafer was a federal employee engaged in official duties; and that the defendants acted wilfully and knowingly when they committed the prohibited acts. The court repeated these principles clearly, more than once. He stressed the environmental factors which might in this case make the slightest amount of physical resistance illegal. The charge did emphasize, perhaps unwisely, the importance of mere touching. Despite the shortcomings of some sections of the charge, however, taken as a whole it was not misleading. The jury was sufficiently apprised of the elements of the crime, and the convictions must stand.

Judgment affirmed.