**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Reinhold SOMMERSTEDT,
Defendant-Appellant.**

No. 84–5116.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1984.

Decided Feb. 7, 1985.

Richard E. Drooyan, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Joe Alfred Izen, Jr., Houston, Tex., for defendant-appellant.

Before PREGERSON and BOOCHEVER, Circuit Judges, and ORRICK,* District Judge.

PREGERSON, Circuit Judge:

Reinhold Sommerstedt appeals his conviction for assaulting Christine Byrd, an Assistant United States Attorney, in violation of 18 U.S.C. § 111 (1982). We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 (1982). We affirm.

FACTS

On December 5, 1983, Sommerstedt was a spectator at the oral argument in *United States v. Condo*, 741 F.2d 238 (9th Cir. 1984) (per curiam). The defendant-appellant in that case, Armen Condo, appearing in pro. per., operated a group called "Your Heritage Protection Association." Sommerstedt was a member of the group. Arguing against Condo's position on appeal was Assistant United States Attorney Christine Byrd.

The argument was held in the City Council Chambers of the Pasadena City Hall. Just before the conclusion of Condo's rebuttal, a member of the court told Condo that he was "fighting a lonely battle." In response to this remark, Sommerstedt stood up silently for the last one or two minutes of the argument.

After oral argument, Sommerstedt approached Alan Lipkin, a special agent for the Internal Revenue Service (IRS), who was moving toward the courtroom exit. Lipkin had supervised the investigation against Condo. Sommerstedt asked Lipkin in a loud, threatening manner whether he headed the IRS group investigating tax protesters. After Lipkin responded affirmatively, Sommerstedt demanded that Lipkin return records seized from Sommerstedt's employer, Scientific Asset Management, pursuant to a search warrant. Lipkin told Sommerstedt that he was the subject of a grand jury investigation and should direct his questions to a United States attorney.

Five minutes later, Assistant United States Attorney Christine Byrd was in the hallway outside the courtroom conversing with several United States deputy marshals and IRS agents about the proceedings. By now, Sommerstedt was standing at the opposite end of the hallway in a large group of people that included Condo. Sommerstedt then broke off from the group and walked toward the end of the hallway where Byrd was standing. Sommerstedt alleged that he turned sideways to make his way through the group in which Byrd was standing. Another defense witness testified that if Sommerstedt made contact with Byrd at all, he merely brushed against her. Prosecution witnesses, however, testified that Sommerstedt walked briskly up to Byrd, jolted her left arm and shoulder with his left side, and then hurried away without saying a word. Byrd suffered no physical injury but testified that she was shocked and upset by the collision.

STANDARD OF REVIEW

■ Sommerstedt contends that the evidence was insufficient to support the jury's

* The Hon. William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

verdict. In reviewing a jury's verdict we must view the evidence in the light most favorable to the government and must draw all reasonable inferences supporting the conviction. *United States v. Francisco*, 536 F.2d 1293 (9th Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 312 (1976); *United States v. Beecroft*, 608 F.2d 753, 756 (9th Cir.1979). There was ample evidence for the jury to conclude that Sommerstedt deliberately jolted Byrd's left arm and shoulder with his left side.

## PROPOSED JURY INSTRUCTION

Defense counsel attempted to prove at trial that if Sommerstedt made contact with Byrd at all, he merely brushed against her. Therefore, defense counsel requested that the district court give a jury instruction entitled "Offensive Touching—Required Degree of Aggravation." The instruction stated in part:

> Section 111 is not meant to sweep in all harassment of Government officials involving "laying a finger" on them.... Under the statute, there are circumstances and environmental factors which make the slightest amount of physical contact between the Defendant and the Government official illegal. In the present case, however, no such aggravating circumstances or "environmental factors" are present.

Sommerstedt contends that the district court erred in refusing to give this instruction.

■ A trial court must instruct the jury on a defendant's theory of the case only if the evidence sufficiently supports the theory and the theory is supported by law. *United States v. Davis*, 597 F.2d 1237, 1239 (9th Cir.1979). Sommerstedt's theory is not supported by law.

■ The defensive theory, indicated in the proposed instruction, is that Sommerstedt could not be convicted under section 111 unless he used more than a minimal level of force against Assistant United States Attorney Christine Byrd. He bases his theory on Congress's use of the word "forcibly" in section 111, which provides in part:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined no more than $5,000 or imprisoned not more than three years, or both.[1]

We reject Sommerstedt's theory because we find that "forcibly" means only that some amount of force must be used. *See United States v. Abraham*, 627 F.2d 205 (9th Cir.1980) (per curiam). Appellants in *Abraham* had been convicted under 18 U.S.C. § 111 for assaulting an FBI agent while he was serving process. They argued that the jury should have been instructed on 18 U.S.C. § 1501, which made it a misdemeanor to assault an authorized person serving process, because less force was required to make out a violation of section 1501 than of section 111. We stated that we found "nothing in the language of the two statutes, the legislative history, or the cited authorities to suggest such a distinction" between the two statutes. *Id.* at 207.

Because section 1501 outlaws "assaults," *Abraham* stands for the proposition that no more force is required to make out a violation of section 111 than is required for an assault under section 1501. An assault "is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir.1976) (per curiam). This definition does not require that any particular level of force be used. Therefore, we hold that a defendant may be convicted of violating section 111 if he or she uses any force whatsoever against a federal officer designated in 18 U.S.C. § 1114. *See United States v. Frizzi*, 491 F.2d 1231, 1232 (1st

---

1. Assistant United States attorneys are designated in 18 U.S.C. § 1114 (1982).

Cir.1974) (spitting in the face of a mail carrier is a forcible assault under section 111 because this statute requires only "an application of force to the body of the victim" not "the infliction of bodily injury." *See also discussion in United States v. Corbitt,* 675 F.2d 626, 629 (4th Cir.1982) (defendant convicted under 18 U.S.C. § 111 for twice pushing away a narcotics agent who sought to detain defendant's shoulder bag until agent could procure a search warrant); *United States v. Mathis,* 579 F.2d 415, 418 (7th Cir.1978) ("A verdict of guilty of assault or interference with a federal official without a weapon under 18 U.S.C. § 111 requires evidence that the defendant used some quantum of force or threat of force in committing the offense"); *United States v. Alsondo,* 486 F.2d 1339, 1345 (2d Cir.1973) (lifting a hand menacingly, as though to shove a federal narcotics agent, and shoving the agent, are "both acts sufficient to constitute a crime under section 111"), *rev'd on other grounds sub nom. United States v. Feola* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).

Sommerstedt's reliance on *United States v. Bamberger,* 452 F.2d 696 (2d Cir.1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972), is misplaced. The appellants in *Bamberger* were convicted under section 111 for their participation in an incident in a maximum security prison. They contended, as does Sommerstedt, that the district court erroneously defined "forcibly" in its jury instructions. But their claim of error was entirely different from Sommerstedt's. The appellants in *Bamberger* conceded that certain "situations in which there is incidental touching or no touching at all can give rise to violations" of section 111. *Id.* at 699. Their contention on appeal was that the district court erred because its instruction emphasized the quantum of touching but failed to explain that the defendants must have used or attempted to use force "as a method of persuasion of a federal official." *Id.* Although the court noted that the charge may have unwisely emphasized the impor-

tance of mere touching,[2] "taken as a whole it was not misleading" and "adequately defined the elements of the crime." *Id.* at 700.

### Public Policy

The goal of Congress in enacting 18 U.S.C. § 111 in 1934 was to give "maximum protection to federal officers...." *United States v. Feola,* 420 U.S. 671, 684, 95 S.Ct. 1255, 1263, 43 L.Ed.2d 541 (1975). Fulfillment of this goal required "the highest possible degree of certainty that those who killed or assaulted federal officers were brought to justice." *Id.* Sommerstedt asks us to hold that section 111 is not implicated by the use of a small amount of force against a federal officer. Such a ruling would create uncertainty as to the degree of severity of assaults on federal officers punishable under section 111. Such uncertainty would frustrate Congress's goal in enacting this statute.

The present case illustrates why federal officers, in performing their duties, should have maximum protection from the wrongful use of any force directed against them. An assistant United States attorney is responsible for prosecuting persons accused of federal offenses. While she was not physically injured by Sommerstedt's wrongful assault, if this incident goes unpunished, government counsel might conceivably be deterred from vigorously prosecuting criminal defendants to the best of her abilities.

### COERCION OF THE VERDICT

Sommerstedt argues that the district court coerced a verdict by sending the jury back for deliberations after the foreperson indicated that the jury could not reach a unanimous verdict.

We review for abuse of discretion a district court's decision whether to declare a mistrial when a jury indicates that it is deadlocked. *United States v. See,* 505 F.2d 845, 850 (9th Cir.1974) (citing *Illinois v. Sommerville,* 410 U.S. 458, 462, 93 S.Ct.

---

**2.** The jury instruction stated in part: "If there is force, no matter how slight ... that would be

sufficient" for a conviction under section 111. *Bamberger,* 452 F.2d at 698.

1066, 1069, 35 L.Ed.2d 425 (1973); *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961)), *cert. denied sub nom. Gordon v. United States,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

■ In deciding whether to declare a mistrial, the district court should take all relevant circumstances into account rather than apply an abstract formula. *United States v. See,* 505 F.2d at 851. A jury's statement that it currently is deadlocked is, by itself, an insufficient ground for declaring a mistrial. *Id; see also United States v. Ross,* 626 F.2d 77, 81 (9th Cir.1980) (trial judge did not abuse discretion by not declaring mistrial after jury failed to reach verdict on all counts after a full day of deliberations).

Here, jury deliberations began on Friday, March 30, at 9:00 a.m. At 2:12 p.m. that afternoon the foreperson sent a note to the judge stating: "The jury is unable to reach a unanimous verdict." The judge put the jurors in the box and instructed them on the importance of reaching a verdict. He then asked the foreperson whether the jury could reach a verdict if it deliberated a little longer. The foreperson replied: "I don't think that would serve any useful purpose, your Honor. I don't think we would be able to reach a unanimous verdict." The judge, nevertheless, sent the jury back for further deliberations at 3:36 p.m.

At 5:05 the judge received another notice from the jury stating that it was unable to reach a unanimous verdict. The judge again instructed the jury on the importance to the parties of having a verdict and asked the jury to resume deliberations on Monday, April 2, at 9:00 a.m. At 10:30 a.m. on April 2, the jury reached a unanimous verdict of guilty.

■ The record does not indicate that the jury was exhausted. Moreover, the jury had three full days of testimony to evaluate. Accordingly, we are unable to conclude that Judge Kenyon abused his broad discretion by asking the jury to deliberate for more than one day.

## LESSER INCLUDED OFFENSE

Sommerstedt argues that the district court erred by not instructing the jury that it could find him guilty of violating 40 U.S.C. § 318b (1982), a lesser offense included within 18 U.S.C. § 111. Sommerstedt did not request such an instruction below. Therefore, he is entitled to a new trial only if the district court's failure to instruct the jury on section 318b was plain error. *See* Fed.R.Crim.P. 30, 52(b).

■ We find that the district court's failure to give an instruction on section 318b was neither plain error nor error at all. An offense under section 318b may take place only on property under the "administration and control" of the United States and "over which the United States has acquired exclusive or concurrent jurisdiction." 40 U.S.C. § 318b. Sommerstedt introduced no evidence that the Pasadena City Hall, where he jolted Byrd, meets either of these conditions.

## ELICITING OF PREJUDICIAL EVIDENCE

Sommerstedt argues that the district court erred in denying his motion for mistrial because the prosecution elicited prejudicial evidence on cross-examination of a defense witness. The prosecution asked witness Wesley Stepp: "The first time then that you knew anything about the Condo case came from Mr. Sommerstedt?" Stepp answered: "I read something in the paper about him being convicted of mail fraud."

We review a district court's denial of a motion for mistrial for abuse of discretion, *United States v. Hodges,* 566 F.2d 674, 676 (9th Cir.1977) (per curiam), and find that the district court correctly denied the motion for two reasons.

■ First, the government's questioning of Wesley Stepp was not improper. The government did not ask Stepp about the nature of Condo's case. Rather, Stepp's answer was unresponsive to the question.

Second, the district court cautioned the jury immediately after Mr. Stepp's answer, thereby curing any potential harm from his answer. *See United States v. Buras*, 633 F.2d 1356, 1360–61 (9th Cir.1980) (district court correct in not declaring mistrial following improper questioning of defendant where court sustained defendant's objection and gave curative instructions immediately thereafter and again at close of trial); *Hodges*, 566 F.2d at 676 (district court did not abuse its discretion in denying motion for mistrial where prosecution made reference in cross-examination to defendant's kidnapping conviction but court immediately instructed jury to disregard the matter and it did not appear that jury was improperly influenced).

## IMPEACHMENT OF WITNESSES

■ Sommerstedt contends that the district court erred in allowing the government to impeach defense witnesses by eliciting testimony about their beliefs. Specifically, Sommerstedt contends that the government improperly elicited testimony that he and other defense witnesses were associated with Condo, a convicted felon, and that they shared Condo's anti-tax beliefs. As for Sommerstedt, the testimony was clearly relevant to show his alleged motive and intent to intimidate or interfere with an Assistant United States Attorney's performance of her duties.

■ As for testimony that other defense witnesses were associated with Condo, any doubt that may have existed about the admissibility of this testimony was dispelled by the Supreme Court's decision in *United States v. Abel*, —— U.S. ——, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), *rev'g* 707 F.2d 1013 (9th Cir.1983). Respondent in *Abel* argued that his bank robbery conviction should have been overturned because the district court allowed the prosecution to elicit testimony that respondent and his key witness, Robert Mills, belonged to a " 'secret type of prison organization' which had a creed requiring members to deny its existence and lie for each other." *Id.* 103 S.Ct. at 467. The Court held that this testimony was admissible because it showed Mill's possible bias toward respondent.[3] *Id.*

Two of the Court's findings are most relevant here. First, the Court found that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* at 469.[4] Second, the Court found that membership of a party and a witness in the same organization, even without proof that either one has adopted the tenets of the organization, is probative of bias. *Id.* If testimony of membership alone is probative of bias, then testimony that Sommerstedt and other defense witnesses were associated with Condo and shared his anti-tax beliefs was clearly admissible to prove the bias of these witnesses.

## OTHER CONTENTIONS MERITLESS

Finally, Sommerstedt contends that the district court should have dismissed the indictment and that the district court was biased in favor of the government at trial. Our review of the record satisfies us that these contentions are meritless.

AFFIRMED.

**3.** The Court defined bias as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor or against a party." *Abel*, 105 S.Ct. at 469.

**4.** In *Abel*, the Court also observed that "[i]f the organization is a loosely knit group having nothing to do with the subject matter of the litigation, the inference of bias arising from common membership may be small or non-existent." 105 S.Ct. at 470. In the instant case, the organization may well have been loosely knit, but its purpose was closely related to the subject matter of the litigation.