**UNITED STATES of America, Appellee,**

v.

**Albert Reginald WALKER,
Defendant-Appellant.**

**No. 205, Docket 87–1189.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1987.

Decided Dec. 22, 1987.

Andrew C. McCarthy, Sp. Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D. of New York, Kerri L. Martin, Asst. U.S. Atty., New York City, on brief), for appellee.

Robert E. Precht, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, on brief), for defendant-appellant.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Albert Reginald Walker appeals from a final judgment entered in the United States District Court for the Southern District of New York after a jury trial before John E. Sprizzo, *Judge*, convicting Walker of one count of forcibly assaulting, intimidating, and interfering with a federal probation officer, in violation of 18 U.S.C. § 111 (1982). Walker contends that there was insufficient evidence to sustain the conviction, and that the prosecutor's rebuttal summation prejudiced his right to a fair trial. We affirm the judgment of the district court.

## I. BACKGROUND

### A. *The Evidence*

Taken in the light most favorable to the government, the evidence at trial showed the following. In 1986, Walker was nearing the end of a five-year term of probation imposed on him following a prior federal felony conviction. During his probationary term, he had violated the conditions of his probation by submitting urine samples that indicated he was using drugs and by failing to report for scheduled appointments with his probation officer. The probation officer, Donald Freeman, reported these violations to Judge John M. Cannella of the United States District Court for the Southern District of New York, and in September 1986 Walker admitted the violations before Judge Cannella. On October 15, 1986, Judge Cannella sentenced Walker to an 18–month prison term, the term originally proposed by the government for his previous offense, but did not require him to surrender until October 17.

After being sentenced by Judge Cannella on October 15, Walker left the courthouse and went across the street to the Probation Office and asked to see Freeman. Walker refused to identify himself or fill out a visitor's slip, and, without authorization, he entered the corridor leading to the probation officers' offices, opened the door to Freeman's office, and walked in unan-nounced. He asked why Freeman had reported the probation violations and began to use abusive language. Freeman asked him to leave, but Walker refused. He stood over Freeman, who was sitting at the desk, and stated, "I am going to get you outside after work. You are going to pay for what you did," gesturing at Freeman with his thumb and index finger in a way commonly thought to symbolize a gun.

Freeman testified that he did not know what Walker was about to do, so he got out of his chair and left his office. Walker followed Freeman into the corridor and continued his harangue. Reiterating, "I am going to get you for what you did," he stood about one foot away from Freeman and began to remove his jacket. Other probation officers heard the commotion and came into the corridor. Officer Bernard Ray testified that Walker was then within inches of Freeman and was "very irate, loud and boisterous." As Freeman and Walker moved toward the exit, Walker became more abusive and began shouting obscenities. Walker became so irate that Ray felt he had to step between the two men; Walker was so close to Freeman that when Ray stepped between them he made physical contact with both. After being separated from Freeman, Walker was escorted to the elevators by other probation officers, and as he was leaving he stated that he would "see [Freeman] on the street."

### B. *The Summations*

In summation, defense counsel Ruth Chamberlin noted that, in order to prove forcible assault, intimidation, or interference with a probation officer in violation of § 111, the government had the burden of proving force sufficient to make a reasonable person fear immediate bodily harm. She argued that that burden had not been met because the government had not shown that Freeman himself or the other probation officers involved had actually feared violence from Walker. Chamberlin pointed out that neither Freeman nor Ray had testified explicitly that he feared Walker was about to become physically violent.

She emphasized that neither witness had been asked by the prosecutor whether he actually feared immediate use of physical force by Walker, and she argued repeatedly that the reason the question had not been posed was that "the honest answer" would have been that the witness was not afraid.

Special Assistant United States Attorney Andrew C. McCarthy, in his rebuttal summation, stressed that defense counsel too had failed to ask Ray and Freeman whether they feared immediate harm. He began by stating that if defense counsel really believed that the witnesses did not fear physical violence from Walker, "wouldn't that make a great case for her?" Chamberlin immediately objected, stating, "I have no burden of proof in this case." The court overruled the objection, stating, "You have no burden of proof, but you commented on his failure to ask a question. I guess he can comment on your failure to ask a question." McCarthy went on to emphasize defense counsel's failure to ask the questions:

Wouldn't it have been easy? You saw her ask Mr. Ray some questions. Wouldn't it have been easy for her if she really thought that was the answer to say to Mr. Ray, "Isn't it a fact that you didn't believe that there was any threat of a fight?", and get the answer that she says she expected?

As to the cross-examination of Freeman, McCarthy argued that defense counsel had asked many questions about Freeman's life history but none about the incident in question. Chamberlin objected again, stating that Walker had the right to rely on the government's failure to prove its case. The trial judge again overruled the objection, stating that the government had a perfect right to comment on what the defense did or did not do in cross-examination. McCarthy continued:

... Not one single question about what went on in there, nothing about threats, nothing about gestures, nothing about other probation officers coming to his aid, nothing about whether he was assaulted, intimidated or interfered with.

Nothing. It wasn't like she couldn't ask him those questions.

In fact, we all sat here for a long time while she asked him an awful lot of questions, but nothing, ladies and gentlemen, about the evidence.

His testimony about what went on in that office is unchallenged. The evidence of the offense charged was simply not confronted during her cross-examination of the government's most important witness.

In charging the jury, Judge Sprizzo included the traditional instructions as to the government's burden of proving each element of its case beyond a reasonable doubt. He ended by reiterating that the defendant bore no burden whatever:

I think I told you, but if I didn't you should understand that under the law, the defendant doesn't have any burden to do anything. I thought I said that to you. He does not have to produce any evidence; does not have to do anything and can rely—and he has a constitutional right to rely on the failure of the government to prove his case. That is a constitutional right he has in this case and any criminal case.

The jury found Walker guilty, and Judge Sprizzo sentenced him to five years' probation, to follow the 18-month prison term imposed by Judge Cannella. This appeal followed.

## II. DISCUSSION

On appeal, Walker contends principally that (1) the evidence was insufficient to support a conclusion that his behavior would have led a reasonable person to fear immediate bodily harm, and (2) the government's rebuttal summation impermissibly shifted the burden of proof to the defense. Although the case was close and the rebuttal summation was not unflawed, we find no basis for reversal.

### A. *Sufficiency of the Evidence*

Section 111 of 18 U.S.C. provides, in pertinent part, that

[w]hoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Probation officers are among the persons designated in 18 U.S.C. § 1114 (1982).

As judicially interpreted, the term "forcibly" in § 111 does not mean that force must actually have been used; it is sufficient if force was threatened. *See, e.g., United States v. Giampino,* 680 F.2d 898, 902 (2d Cir.1982); *United States v. Mathis,* 579 F.2d 415, 418 (7th Cir.1978). Nor need the defendant actually have touched the officer; the "forc[e]" element of § 111 may be satisfied by proof that there was such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death. *See United States v. Bamberger,* 452 F.2d 696, 699 n. 5 (2d Cir.1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972). If the "forc[e]" element is to be established by proof of threats rather than by proof of actual touching, the threat must have been of immediate harm. Thus, we have noted that a mere " 'implied threat of the use of force sometime in the indefinite future' " would not suffice to violate § 111. *United States v. Bamberger,* 452 F.2d at 699 (quoting *United States v. Glover,* 321 F.Supp. 591, 595 (E.D.Ark.1970)).

Congress's purpose in enacting § 111 was both to deter harm to certain federal officials and to deter interference with their law enforcement activities. *See United States v. Feola,* 420 U.S. 671, 678–83, 95 S.Ct. 1255, 1260–63, 43 L.Ed.2d 541 (1975). In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of bodily harm that might reasonably deter a federal official from the performance of his or her duties. The proper standard for determining whether the requisite degree of force was displayed, therefore, is an objective one, *i.e.,* whether the defendant's behavior would reasonably have inspired fear in a reasonable person. *See United States v. Bamberger,* 452 F.2d at 699 n. 5. Thus, although the victim's subjective state of mind is not irrelevant to determining whether the amount of force threatened or displayed was sufficient to make fear reasonable, *see United States v. O'Connell,* 703 F.2d 645, 650 (1st Cir.1983), explicit testimony as to the victim's state of mind is not necessary if the evidence of the observable events permits an inference that imminent bodily harm would have been feared by a reasonable person standing in the official's shoes.

When considering a contention that the evidence adduced at trial was insufficient to sustain a conviction, we must view that evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must credit every inference that could have been drawn in the government's favor, *e.g., United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983), and uphold the conviction if, from the inferences reasonably drawn, the jury might fairly have concluded that the defendant was guilty beyond a reasonable doubt, *e.g., United States v. Taylor,* 464 F.2d 240, 244–45 (2d Cir.1972).

Viewed against these standards, the evidence in this case was sufficient to support Walker's conviction. The absence of explicit testimony by Freeman that he feared bodily harm, while perhaps providing grist for defense counsel's summation, was not a material flaw in the government's case. The government's evidence included testimony that Walker had abruptly entered Freeman's office without being announced and stood over Freeman, berating him with abusive language and making a gesture commonly understood to symbolize the pointing of a gun. Walker closely followed Freeman from his office and, while standing inches away, began to remove his jacket, a not uncommon precursor to the use of physical force. Freeman testified that he left his office because he did not know what Walker was about to do. Ray testified that he felt impelled to step

between the two men because Walker had become so irate. The evidence taken as a whole, with all reasonable inferences drawn in the government's favor, was sufficient to permit a rational juror to conclude beyond a reasonable doubt that a reasonable person in Freeman's position would have feared that Walker was about to use injurious physical force.

Finally, we see no reason to infer that the jury gave improper weight to Walker's reported threats of violence at some future unspecified time. The trial judge properly instructed the jury that "the threat of force or the threat of bodily injury must be present," that the statute required that "the threat be one of immediate bodily harm," and that

> the threat of bodily harm in the future— there was some testimony about "I will get you after work," etc., that is not the kind of thing that would be sufficient under the law. You have to find that there was a present threat, immediate threat for you to find the forcible requirement to be met.

There is no basis for believing that the jury did not heed these instructions, and we conclude that the evidence properly considered was sufficient to support the jury's verdict.

## B. *The Government's Rebuttal Summation*

In order to obtain reversal of a conviction on grounds of prosecutorial misconduct, a defendant must show that he was substantially prejudiced by the misconduct. *United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986). In determining whether there was substantial prejudice, we normally consider the "severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed. 2d 1284 (1982). While it is serious misconduct for the prosecutor to state that the defendant has his own burden of proof, proper instructions by the trial court may suffice to prevent undue prejudice and make the misconduct harmless. *See United States v. Cruz*, 797 F.2d 90, 93 n. 1 (2d Cir.1986) (affirming a conviction despite prosecutor's language "[t]he defense ... has to convince you," because it was cured by trial court's instructions); *United States v. Skandier*, 758 F.2d 43, 45 (1st Cir.1985) (finding prosecutor's burden-shifting remarks harmless in light of curative measures). In the present case, though we find noteworthy several aspects of the proceedings during the summations, with neither the attorneys nor the trial court performing flawlessly, we conclude that in light of the defense summation, the government's rebuttal summation was improper to only a limited extent and the trial court's instructions as a whole prevented the occurrence of substantial prejudice.

At the outset, we note that defense counsel Chamberlin, though she commenced by framing the question as whether a reasonable person would have feared imminent violence from Walker, quickly appeared to shift to an argument that assumed, incorrectly, that if there was no subjective fear of such violence, the government could not prevail. And though the defense was plainly entitled to argue that the absence of any explicit testimony by the government's witnesses that they had thought the use of force by Walker was imminent should lead the jury to infer that those witnesses had not so viewed Walker's actions, Chamberlin went further and impugned the integrity of the government's trial performance. Thus, she reiterated that the government had not asked the witnesses about their subjective reactions and repeatedly stated that the "honest" answer to such a question would have been that Freeman had no fear that force was imminent; in addition, she repeatedly argued that the government was asking the jury to draw "false" inferences with respect to the perceived imminence of violence by Walker. The repetitive refrain that the government had deliberately declined to elicit "honest" answers and instead urged the jury to draw "false" infer-

ences suggested that there had been a dishonest presentation by the government.

 When the defendant has impugned the integrity of the government's case, the government is entitled to respond, *see United States v. Bagaric,* 706 F.2d at 60; *United States v. Sindona,* 636 F.2d 792, 807 (2d Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981), but its reply must be suitable to the occasion, *United States v. Bagaric,* 706 F.2d at 60. Much of the government's rebuttal summation was indeed suitable, including its comments that Chamberlin had asked Freeman many questions about his life and times but none about the incident in question. An observation that evidence adduced by the government was not confronted on cross-examination is entirely proper. *E.g., Virgin Islands v. Joseph,* 770 F.2d 343, 350 nn. 8 & 9 (3d Cir.1985). And in light of the objective standard that is applicable to a § 111 charge, *see* Part II.A. above, and Chamberlin's repeated argument that the honest answer to the unasked question would have been that there was no subjective fear, it was not untoward for the government to point out that defense counsel too could have asked that question. However, to the extent that the government argued that Chamberlin could have "ma[d]e a great case" for Walker by asking certain questions and getting favorable answers, it improperly crossed the line into argument that may well have suggested to the jury that the defendant had some obligation to make a case of his own.

The trial court's response to the objection to this precise part of the summation was that the defendant had no burden of proof, but that the government was entitled to comment on the defense's failure to ask a question because the defense had commented on the government's failure to ask a question. This tit-for-tat theory had no proper application here, where the prosecution's commentary might reasonably have been interpreted by the jury as indicating that the defendant had a burden to present a case of his own. When such a comment has been made, the court should sustain,

not overrule, the defendant's objection, and it would be well advised to caution the government against making such arguments and to make a precautionary statement directly to the jury that the defendant has no such obligation.

Nonetheless, the trial court's instructions to the jury at the close of the summations were entirely proper, repeatedly stating that the government bore the burden of proving each element of its case beyond a reasonable doubt and stating that the defendant was entitled to rely on the government's failure to prove its case. For example, early in the charge, the court noted that

> [t]here were lots of arguments about questions that were or were not asked.... [Y]ou should also keep in mind the government has the burden of proof here. The defendant has no burden of proof, and the government has the sole burden, and that is a burden that never shifts. So the defendant does not have to come forward with any evidence....

At the end, the court emphasized that a defendant does not have to produce any evidence and has a constitutional right to rely on the failure of the government to prove its case, and, in short, that "the defendant doesn't have any burden to do anything." And though the court had not sustained Walker's objection to the government's improper statement, its response had confirmed, in a statement to Chamberlin, "[y]ou have no burden of proof...." We have no reason to assume that the jury was not listening to this response or that it disregarded the later explicit instructions to it that Walker had no burden to prove or disprove anything.

Given the limited impropriety of the government's rebuttal summation, the curative instructions of the trial court, and the sufficiency of the evidence from which the jury could have concluded that a reasonable person would have feared imminent physical violence by Walker, we conclude that the summation did not substantially prejudice Walker.

We have considered all of Walker's additional objections to the government's summation and have found them to be without merit.

### CONCLUSION

The judgment of conviction is affirmed.

LUMBARD, Circuit Judge, concurring:

I concur in affirming the judgment of conviction.

There was adequate evidence from which the jury could have concluded, as it did, that Walker's actions constituted an assault on Freeman in violation of 18 U.S.C. § 111.

The rebuttal summation made by the Assistant United States Attorney was a proper response to the arguments of the defense counsel. The prosecutor's remarks, in my opinion, did not go beyond what was permissible.

Finally, the trial judge made it clear through his instructions to the jury that the burden of proof at all times was on the government.