*11-1936-cr (L)*
*United States v. McIntosh*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

August Term 2013

(Argued: October 4, 2013          Decided: June 4, 2014)

Nos. 11-1936-cr, 13-381-cr

_____

UNITED STATES OF AMERICA,
*Appellee,*


-v-


GARY MCINTOSH,
*Defendant-Appellant*.

_____

Before:      LIVINGSTON, LYNCH, and DRONEY, *Circuit Judges*.


Gary McIntosh appeals from a judgment of conviction and sentence of the United States District Court for the Eastern District of New York (Block, *J.*) entered May 6, 2011.  McIntosh was convicted pursuant to 18 U.S.C. § 111(a) of assault on a federal officer, following a jury trial; of false personation of a federal officer, in violation of 18 U.S.C. § 912, following a guilty plea; and of concealment of a public record, in violation of 18 U.S.C. § 641, following a guilty plea.  McIntosh also appeals from the district court's January 22, 2013, order denying his motion pursuant to Federal Rule of Criminal Procedure 35.  We conclude that the district court did not err in declining to instruct the jury that it must unanimously agree as to which means of commission set forth in 18 U.S.C. § 111(a) was proven beyond a reasonable doubt.  Further, we determine that the sentence imposed was substantively and procedurally reasonable; we also conclude that McIntosh did not raise a clear error in his Rule 35 motion, and thus it was properly denied.  Accordingly, we AFFIRM the May 2011 judgment and the January 2013 order of the district court.

RICHARD M. TUCKER (Jo Ann M. Navickas, on the brief), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellee*.

GARY MCINTOSH, Brooklyn, N.Y., *pro se*.

PER CURIAM:

Defendant-Appellant Gary McIntosh ("McIntosh"), proceeding *pro se*, appeals from a May 6, 2011, judgment of conviction and sentence of the United States District Court for the Eastern District of New York (Block, *J.*). McIntosh was convicted after a jury trial on one count of assault on a federal officer in violation of 18 U.S.C. § 111(a) ("Count One"). He also entered a plea of guilty to one count of false personation of a federal officer, in violation of 18 U.S.C. § 912 ("Count Two"), and one count of concealment of a public record, in violation of 18 U.S.C. § 641 ("Count Three"). The district court sentenced McIntosh to 12 months' imprisonment on Counts One and Three, and to 18 months' imprisonment on Count Two, all to run concurrently. McIntosh also appeals from the district court's January 22, 2013, order denying as moot his motion pursuant to Federal Rule of Criminal Procedure 35 to correct "clear error" in the May 2011 judgment. On appeal, McIntosh contends principally that: (1) the district court erred in declining to instruct the jurors that they must unanimously agree as to one specific method – *i.e.*, whether he "forcibly

2

assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], or interfere[d] with" a federal officer, *see* 18 U.S.C. § 111(a) – by which McIntosh violated § 111(a), so as to support his conviction on Count One; (2) the twelve-month sentence imposed on Count Three was procedurally unreasonable; (3) the sentences imposed on Counts One and Three were substantively unreasonable; and (4) the district court erred in denying his Rule 35 motion. For the reasons that follow, we affirm the district court's May 2011 judgment and January 2013 order.

## BACKGROUND

### A. Facts

The following facts are drawn from uncontradicted testimony during McIntosh's jury trial on Count One. On March 24, 2010, agents from the Immigration and Customs Enforcement ("ICE") and the State Department, including Ryan Boyd, Ed Carey, Kevin Barry, Mark Mancini, Joseph Quigley, Robert Fitzsimmons, Reilly Dundon, and Ryan Elliott, went to McIntosh's Brooklyn home to execute an arrest warrant for McIntosh. The agents were in plain clothes, but most were wearing badges on lanyards around their necks identifying them as federal officers. When McIntosh exited his building shortly before 8:00 a.m., the agents approached him, shouting "Police!" and "Gary!" J.A. 218. McIntosh then

3

climbed into his Volvo, which had darkly tinted windows and was parallel parked on his street, locking the doors behind him. The agents, seeking to arrest McIntosh, surrounded his car, pounding on its windows with their hands and loudly identifying themselves as law enforcement. The officers shouted "Police. Open the door!," J.A. 185, and "Police, police, get your hands in the air," J.A. 219. The officers attempted to open the car door, but McIntosh kept the doors locked, turned on the engine, and began to drive the car forward and backward, striking the vehicles parked in front of and behind his own.

ICE Agent Fitzsimmons moved to the front of the vehicle where he displayed his badge through the windshield. McIntosh then removed his hands from the steering wheel and reached below. In reaction, Agent Fitzsimmons drew his pistol, pointed it at McIntosh, and yelled, "Get your [h]ands back on to the steering wheel where I c[an] see them." J.A. 221. McIntosh returned his hands to the steering wheel, after which Agent Fitzsimmons returned his pistol to its holster.

All the while, the agents were yelling "Police!," J.A. 186, and "Police, federal agents, open the door," J.A. 222. Agent Boyd then drew his weapon, identified himself as a police officer, and commanded McIntosh to stop the vehicle. Because he could not see McIntosh's hands through the tinted window, State Department

Agent Elliott shattered the passenger-side window with his baton. While maintaining direct eye contact with McIntosh, Agent Elliott identified himself as a law enforcement officer and asked McIntosh to stop the car. Subsequently, McIntosh began "smashing as hard as he could" into the government vehicle which was located in front of him and the vehicle behind him. J.A. 222. The car's wheels were screeching and the car was sliding. McIntosh drove with such force that he was able to push the government vehicle forward at least one or two feet.

ICE Agent Quigley took out a sledgehammer that he had planned to use to enter McIntosh's apartment for the search, and he struck the driver-side window. The sledgehammer made only a small hole in the window, and while Agent Quigley attempted to retrieve the sledgehammer from the window, McIntosh had enough time to maneuver his vehicle into a position from which he could exit the parking spot. Agent Boyd, with his weapon still drawn, was standing near the driver's side headlight when McIntosh drove the vehicle directly at him. Believing McIntosh was about to hit Agent Boyd, Agent Fitzsimmons pulled Agent Boyd out of the way and yelled, "He's coming out, let him go." J.A. 222-23. McIntosh then drove away. Agents effected McIntosh's arrest later that evening after tracking his cellular phone to determine his whereabouts.

## B. Jury Charge

During the jury charge conference, the government asked the district court to remove language from the proposed jury instructions that would have required the jury unanimously to agree as to which means of commission set forth in 18 U.S.C. § 111(a) had been shown beyond a reasonable doubt, *i.e.*, to require that the jurors unanimously agree regarding whether McIntosh had forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Agent Boyd while he was engaging in or on account of the performance of official duties. The district court agreed to the modification, over defense counsel's objection.

Subsequently, the district court charged the jury, in pertinent part, as follows:

> The first element the government must prove beyond a reasonable doubt is that Gary McIntosh forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with Agent Ryan Boyd.
>
> It is not necessary for the government to prove the defendant committed each of these acts. Rather, it is sufficient if the government proves beyond a reasonable doubt that the defendant did any one of these acts; that is, forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with Agent Ryan Boyd. The word "forcibly" is the adjective that goes with each of these. You do not have to agree unanimously about which act the defendant did but you must unanimously agree that the defendant did at least one of those acts.

6

J.A. 435-36. The district court then defined each of the means of commission set forth in Section 111(a).

After about two hours of deliberation, the jury acquitted McIntosh of using a deadly or dangerous weapon to forcibly assault, resist, oppose, impede, intimidate, or interfere with Agent Boyd, but found McIntosh guilty of the lesser included misdemeanor offense of committing one of those acts without using a deadly or dangerous weapon.

The district court ultimately sentenced McIntosh, as previously noted, to 12 months' imprisonment on Counts One and Three, and to 18 months' imprisonment on Count Two, all to run concurrently. McIntosh subsequently filed this timely appeal. On July 12, 2011, McIntosh completed his federal sentence on all three of his counts of conviction.

## DISCUSSION

**A. Jury Instruction on Count One**

Section 111(a) provides, in relevant part:

> Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both.

7

18 U.S.C. § 111(a). McIntosh's principal claim on appeal is that the district court erred in declining to instruct the jury that it must unanimously agree as to the specific means by which he violated Section 111(a), as proven beyond a reasonable doubt.

"To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." *United States v. Quinones*, 511 F.3d 289, 313-14 (2d Cir. 2007). "Although we review *de novo* a claim of error in jury instructions, . . . we will reverse only where the charge, viewed as a whole, either failed to inform the jury adequately of the law or misled the jury about the correct legal rule." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (internal quotation marks omitted). Section 111(a) makes it a crime to "forcibly assault[ ], resist[ ], oppose[ ], impede[ ], intimidate[ ], or interfere[ ]" with a federal officer "engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a). McIntosh contends that each of these acts is a separate crime and, consequently, that a jury must unanimously agree on a single act in order to find him guilty of violating Section 111(a). We disagree.

In *Schad v. Arizona*, 501 U.S. 624 (1991), the Supreme Court analyzed whether an Arizona statute that defined first degree murder as "murder which is . . . wilful,

deliberate or premeditated . . . or which is committed . . . in the perpetration of, or attempt to perpetrate, . . . robbery," Ariz. Rev. Stat. Ann. § 13-452 (Supp. 1973), described two means of committing first degree murder: premeditated murder and felony murder. *Schad*, 501 U.S. at 628-31, 645 (plurality opinion). A plurality of the Court concluded that because the statute criminalized two separate means of committing first degree murder, rather than codifying two distinct crimes of murder, the defendant was not entitled to a jury instruction requiring unanimity on a single means of commission. *Id.* at 643-45. The important question in this regard, the plurality held, is whether the individual means of committing the crime "are so disparate as to exemplify two inherently separate offenses." *Id.* at 643.

In reaching its decision, the plurality noted that the Court had "never suggested that in returning general verdicts . . . jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone." *Id.* at 631. Indeed, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, *J.*, concurring) (footnotes omitted); *see also Schad*, 501 U.S. at 649

(Scalia, *J.*, concurring in part and concurring in the judgment) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.").

This Court has since applied *Schad* in analyzing whether a jury must unanimously agree on the theory by which a defendant was alleged to have violated 18 U.S.C. § 1001(a), which provides that it is a crime, in the context of a matter under the purview of the federal government, to (1) falsify, conceal, or cover up a material fact; (2) make a materially false statement; or (3) make or use a document containing a materially false statement. *See United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006). In concluding that the district court did not err in failing to instruct the jury that it must agree unanimously as to which theory of the offense supported the verdict, we explained that the different types of fraudulent conduct proscribed by Section 1001 are not separate offenses, but are different means of violating the statute. *Id.*

We conclude that the different types of conduct proscribed by Section 111(a), as in *Stewart*, are not separate offenses, as McIntosh suggests; rather, they describe different means of committing a single crime. *Cf. United States v. Street*, 66 F.3d 969, 974-75 (8th Cir. 1995) (holding that an indictment was not duplicative where it

10

alleged that defendant "knowingly did forcefully assault, resist, oppose, impede, intimidate and interfere" with federal agents, because "Section 111(a)(1) defines a single crime, not multiple offenses"). "The offense is intimidating or threatening by specified acts federal officials engaged in the performance of official duties." *Id.* at 974. Section 111(a) lists all of the acts that constitute the crime in one sentence, and imposes a single penalty for all of them, "a construction which indicates that Congress did not mean to create more than one offense." *United States v. Mal*, 942 F.2d 682, 688 (9th Cir. 1991). Further, "Congress's purpose in enacting § 111 was both to deter harm to certain federal officials and to deter interference with their law enforcement activities." *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (citing *United States v. Feola*, 420 U.S. 671, 678-83 (1975)). "In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of bodily harm that might reasonably deter a federal official from the performance of his or her duties." *Walker*, 835 F.2d at 987. In drafting Section 111, Congress therefore "created the single crime of harming or threatening a federal official, and specified six ways by which the crime could be committed." *Street*, 66 F.3d at 975.

We do not find that these means are so inherently distinct as to render them six separate crimes. Accordingly, the district court did not err in declining to instruct the jurors that they must agree unanimously as to which theory of the offense – assaulting, resisting, opposing, impeding, intimidating, or interfering – supports the verdict. *See Schad*, 501 U.S. at 631-32. We therefore find no error in the district court's jury instruction as to Count One.

**B. Sentencing Challenge**

McIntosh also challenges the reasonableness of his sentence.[1] Our review of criminal sentences includes both procedural and substantive components and "amounts to review for abuse of discretion." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly consider the § 3553(a) factors; bases its sentence on

---

[1] Although McIntosh has been released from federal custody, he relies on potential immigration consequences tied to his sentence to argue that his sentencing challenge is not moot. *See United States v. Hamdi*, 432 F.3d 115, 118-21 (2d Cir. 2005). We assume *arguendo* that such consequences exist. *See* Wright et al., Federal Practice & Procedure § 3533.1, at 763 (3d ed. 2008) ("If the court is convinced that Article III tests are satisfied, . . . it may properly award judgment on an easy merits issue rather than decide whether the same party might instead win because of prudential mootness concerns.").

clearly erroneous facts; or deviates from the Guidelines without explanation." *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (per curiam) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We will "set aside a district court's *substantive* determination" as to an appropriate sentence "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (emphasis in original) (internal quotation marks omitted).

McIntosh asserts that the 12-month sentences imposed on Counts One and Three were unreasonable. He contends that the district court improperly relied on purportedly incorrect statements by the government that McIntosh, in his plea allocution, had admitted to using stolen government credentials in order to facilitate the theft of his original alien file. Immediately after the government made these statements at sentencing, McIntosh's counsel noted on the record that McIntosh had not made such an admission in his allocution. The district court, moreover, appears to have rested any factual determination as to McIntosh's reasons for taking the government credentials on the court's own inferences from the facts established at trial and in the plea colloquy rather than on any purportedly incorrect statements made by the government at sentencing. As noted above, we will vacate a

13

defendant's sentence on a challenge like McIntosh's only if the district court "rests its sentence on a clearly erroneous finding of fact." *Cavera*, 550 F.3d at 190. We find no such clear error here. Further, we cannot conclude that the district court's decision to impose concurrent 12-month sentences on Counts One and Three is outside "the range of permissible decisions." *Id.* at 189. Accordingly, we affirm the district court's sentences on Counts One and Three as both procedurally and substantively reasonable.

**C. Denial of Rule 35 Motion**

During the pendency of McIntosh's federal case, he was sentenced in an unrelated state proceeding to a term of one to three years' imprisonment. At McIntosh's sentencing in the present matter, the district court declined to state a position on whether the federal sentence should run concurrent with or consecutive to the state sentence. Following McIntosh's federal sentencing, he filed a motion pursuant to Federal Rule of Criminal Procedure 35, which permits a defendant to request correction of an "arithmetical, technical, or other clear error" at sentencing. Fed. R. Crim. P. 35(a). The motion requested that the district court order that the federal sentence run concurrent to the state sentence under 18 U.S.C. § 3584. McIntosh went on to serve his federal term of incarceration before serving his state

sentence. The district court then denied the Rule 35 motion, reasoning that the motion was moot because McIntosh had already served both his 18-month federal prison term and his state sentence by the time that the district court ruled on the motion.[2] We hold that the district court did not err in declining to make a determination whether the federal and state sentences should run concurrently or consecutively.

Section 3584(a) states that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." It also sets a default rule if the district court does not rule on this issue: "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a).

"In our American system of dual sovereignty, each sovereign – whether the Federal Government or a State – is responsible for the administration of its own criminal justice system." *Setser v. United States*, 132 S. Ct. 1463, 1471 (2012) (quoting *Oregon v. Ice*, 555 U.S. 160, 170 (2009)) (internal quotation marks and alterations

---

[2] As discussed in note 1, *supra*, we assume without deciding that McIntosh is correct regarding the potential immigration consequences of his sentence and, consequently, that his sentencing challenge is not moot.

omitted). Accordingly, when a defendant serves an initial state sentence and a subsequent a federal sentence, the federal district court "decides whether he will receive credit for the time served in state custody." *Id.* Here, we encounter the reverse scenario, where the federal sentence is served first. In such a case, "the State will decide whether to give [the defendant] credit against his state sentences without being bound by what the district court . . . said on the matter," *id.*, although the district court may, of course, make its views known.

At sentencing in this case, the district court declined to make such a non-binding recommendation to state authorities. *See* J.A. 523 ("I'm not going to recommend that the state make it consecutive. I will leave it up to the state."). We see no reason to think that a district court is *required* to make a determination in these circumstances; indeed, the statute sets a default rule that sentences will be served consecutively when imposed at different times, anticipating that the district court will not always make a determination. *See* 18 U.S.C. § 3584(a). Accordingly, we detect no "clear error" in the sentence imposed by the district court, and we thus affirm the denial of McIntosh's Rule 35 motion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the May 6, 2011, judgment and the January 22, 2013, order of the district court.