Selig **KAMINSKI**, a/k/a Sol Kaye,
Defendant-Appellant,

v.

**UNITED STATES of America,**
Plaintiff-Appellee.

No. 71–3173
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 15, 1972.

H. Elliot Wales, New York City, for defendant-appellant.

Robert W. Rust, U. S. Atty., Harold F. Keefe, Asst. U. S. Atty., Miami, Fla., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal presents the single issue of whether the evidence introduced at appellant Kaye's jury trial was sufficient to warrant his conviction on both counts of a two-count indictment of breaking into a post office at Boynton Beach, Florida, to commit larceny (18 U.S.C. § 2115) and damage to government property (18 U.S.C. § 1361) for which offenses Kaye was sentenced to imprisonment for five years on Count One and a three-year sentence on Count Two, both sentences to be served concurrently. We hold that it was not.

In the late evening of February 12, 1971, the United States Post Office at Boynton Beach, Florida, was broken into and the scene of an attempted burglary.

The government's evidence of appellant's implication and complicity in the crimes charged began with the testimony of Fred H. Michell, Jr., an officer

---

* ▇ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

with the Boynton Beach Police Department. Michell testified that on the night in question he and his partner were riding burglary patrol and were in the vicinity of the Boynton Beach Post Office at approximately 11:40 p. m., an area not frequented by traffic or people at that hour, although well lighted. Kaye was observed by the witness standing in a phone booth closely situated in a corner of the post office building. When the appellant looked in the direction of the police car, which was clearly marked with reflector shields, he left the area of the phone booth, entered the post office, and stood near the locked post boxes. Above the row of mail boxes where Kaye was standing, the well is vented with holes through to the inside of the building. Appellant remained in that position for a matter of seconds before exiting the post office and proceeding up the avenue. Less than half way up the avenue, however, he turned to look back over his shoulder at officer Michell's car.

Kaye's actions prompted officer Michell to stop and question him. During this inquiry the appellant told Michell his car had broken down and that, although from California, he had a business in Tampa. Appellant then handed Michell a business card. The business purportedly represented by the card, however, was later proved to be non-existent since June 1970. Satisfied for the moment, and unable to observe anyone else in or near the post office building, officer Michell allowed Kaye to proceed, although under surveillance.

While driving around and about in the patrol car, officer Michell saw Kaye proceeding on foot. Continuing the moving surveillance the officer lost sight of Kaye. Thereafter, while looking for Kaye on foot, officer Michell observed a Cadillac, with an unidentified white male driving, drive away. After appellant left, officer Michell's suspicion was sufficiently aroused to cause him to radio for assistance to check out the post office. About 30 seconds after seeing the Cadillac, officer Michell was advised, evidently by other police officers, that it was discovered that a burglary had occurred at the post office. This was about 11:52 p. m.

In the meantime Thomas Jones, Jr., at approximately 11:45 p. m. on February 12, 1971, was driving in front of the Boynton Beach Post Office. Jones testified that while approaching the post office he observed and passed a police car standing on the side of the road, before encountering and nearly colliding with a yellow, unlighted automobile which was speedily egressing from the exit to the parking area adjacent to the post office.

At about 11:50 p. m. on February 12, 1971, Boynton Beach police officers Lores Gamble and Ernest Giordano arrived at the post office. They saw no one around. The officers entered the post office and found that the door inside the lobby on the north side of the post office was unlocked. This door evidently had been locked by Lloyd Huggins earlier that evening and picked by burglars. The officers proceeded and observed evidence of the attempted burglary, including a hole burned in the vault door, and a blow torch and other paraphernalia laying in front of the vault door. The safe door was so hot the officers couldn't get close to it to see if entry was gained.

Bennie Frank Green, a deputy sheriff, arrived at the post office about 12:58 a. m., February 13, 1971. The postmaster, Richard Monahan, arrived about 12:15 a. m. These individuals also observed the hole burned in the vault door, as well as the acetylene torch and other paraphernalia. They also observed a string or cord which was on the floor and which extended 25 or 30 feet from in front of the vault door to the entrance door inside the lobby on the north side of the building.

There was no evidence received as to any admissions or confessions, or as to any evidence seized as a result of any

search. The defense did not offer any witnesses, so no rebuttal evidence was offered by the government.

The government contends that Kaye was an aider and abettor—the lookout —to the unknown burglars who were working in the rear of the post office at or about this time. While the government had no direct evidence as to when the post office was burglarized, the prosecution contends that inasmuch as the burnt hole in the vault was still hot, the burglary occurred just moments before the time Kaye was observed by Boynton Beach police officer Michell outside the post office.

■ The most the government established was that Kaye was in close proximity to the post office at a time when perhaps a burglary was going on inside. Officer Michell testified to no act Kaye did to advance the venture. No other witnesses even saw Kaye, or the burglars, or the burglary. The term "aiding and abetting" implies and assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. Baker v. United States, (8 Cir. 1968) 395 F.2d 368; Johnson v. United States, (8 Cir. 1952) 195 F.2d 673.

■ The fact that Kaye was in the post office lobby, which lobby was lighted and open to the public twenty-four (24) hours a day was insufficient to make Kaye an accomplice or aider or abettor. United States v. Williams, 341 U.S. 58, 64–65, 71 S.Ct. 595, 95 L.Ed. 747 (1951); United States v. Holt, 8 Cir. 1970, 427 F.2d 1114; Baker v. United States, supra.

We hold that the evidence in the instant case was insufficient for the jury to conclude that Kaye was guilty of breaking into and damaging the Boynton Beach Post Office.

Reversed.