UNITED STATES of America,
Plaintiff-Appellee,

v.

Emory HIGHTOWER, Adolph Kemp,
and Alfred D. King, Defen-
dants-Appellants.

No. 74–2741.

United States Court of Appeals,
Fifth Circuit.

April 28, 1975.

Isham Anderson, Monticello, Fla. (Court-appointed), for Hightower.

W. Dexter Douglass, Tallahassee, Fla., for Kemp and King.

P. Kevin Davey, Tallahassee, Fla., for defendants-appellants.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., Melvin Horne, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

MURRAH, Circuit Judge:

Appellants Hightower, Kemp and King were tried on a two count indictment. Reading on 18 U.S.C. §§ 111 and 2, Count I charged that the three of them "did unlawfully and forcibly assault, resist, oppose, impede, intimidate and interfere . . . with an officer of the United States Department of Interior . . . while said officer was engaged in and on account of the performance of his official duties . . ." or "did aid and abet" in the commission of this offense. Count II charged that the same three defendants, plus a fourth

* Senior Circuit Judge of the Tenth Circuit sitting by designation.

named Widdon, "did unlawfully possess and transport . . . a firearm, to-wit: a pump shotgun" in violation of 16 U.S.C. § 701. This count also charged aiding and abetting under § 2. The jury found the three defendants guilty on Count I, but acquitted all four defendants as to Count II. A sentence of eighteen months was then imposed as to each convicted defendant.

On this appeal, as in the trial court, the appellants challenge the sufficiency of the evidence, especially relating to the essential element of force; and, for the first time on appeal, they complain of the failure of the instructions to define the statutory terms, particularly the word "forcibly."

█ The evidence against them was based upon the testimony of the authorized[1] wildlife agent who was patrolling the federal game refuge where the offenses were allegedly committed. According to him, he first approached the appellants at about 12:45 a. m. on the refuge, to question them regarding illegal possession of a gun. About fifteen minutes later, he reapproached them from a hiding spot when he heard a shot fired in the vicinity of their truck, still on the refuge. After the agent identified himself again as a federal wildlife officer, Kemp refused to identify himself, at the agent's request. Hightower allowed the agent to smell the shotgun. And on request, King turned over his hunting and driver's licenses, admitting ownership of the shotgun. The agent then told King that he would be charged with unauthorized possession of a gun and a light and requested, as evidence, the gun, which King refused. When King also expressed unwillingness to go to the local law enforcement office, the agent went to his car to radio for assistance. While the agent was sitting in the car on the driver's side for this purpose, he saw Hightower walk around to the right side of the car. A few minutes later, according to the agent, Kemp "reached in [the car] and grabbed [the agent] by the coat and tried to reach over to where [King's] hunting license was." The agent "pushed [Kemp's] arm away" and told him to "turn loose"; but Kemp said, " 'Ah, hell, he won't shoot' " and "reached back in and then grabbed [the agent] on the jacket and was trying to get the driver's license." After Kemp gave "a pretty good tug" on the agent's jacket, King and Widdon "pulled him on back." Hightower then falsely identified Widdon as "Wilson . . . a deputy sheriff"; and the agent thereupon gave King's licenses to Widdon "for him to get them off the refuge." After they departed, the agent discovered that a tire on the right side of his car had been cut and was flat.

Testing the sufficiency of the evidence, we, of course, consider the case in light of the evidence most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Yaniz-Cremata, 503 F.2d 963 (5th Cir. 1974). Appellants claim that there was no showing of force as required by the statute and the indictment. And force is a required element. United States v. Marcello, 423 F.2d 993 (5th Cir. 1970); United States v. Glover, 321 F.Supp. 591, 593 (E.D.Ark. 1970); Long v. United States, 199 F.2d 717 (5th Cir. 1952). See also United States v. Bamberger, 452 F.2d 696 (2d Cir. 1971). In the case of Kemp, there was sufficient evidence of the use of force. As we have seen, the agent testified that after refusing to identify himself, Kemp grabbed the agent's jacket in an attempt to retrieve King's licenses. There was no testimony, however, that either Hightower or King at any time used force against the agent.

Nor was there evidence that either of them aided or abetted Kemp's apparently impulsive and abrupt forcible act in grabbing the agent's jacket. To prove aiding and abetting, "Something of significance beyond the fact of presence is

---

1. Both the agent and the manager of the refuge testified that the agent was authorized, as part of his official duties, to patrol the refuge and was so engaged at the time of the events involved here.

necessary." United States v. Barber, 429 F.2d 1394, 1397 (3rd Cir. 1970). There must be evidence "that [the defendant] associated himself with the commission of the crime, that he participated in it with a desire that it be accomplished, and that he committed some overt act designed to make it a success." United States v. Barfield, 447 F.2d 85, 88 and cases cited there (5th Cir. 1971). Rather than assisting Kemp's forcible act, King helped to restrain him.

The only possible act of force by Hightower is cutting the tire, but the testimony that he was seen on the right side of the car is not alone of sufficient probative value to support a finding that he did cut the tire. It is true that Hightower misidentified Widdon as "Wilson . . . a deputy sheriff"; and the jury could have properly inferred that Hightower assisted Kemp, after his forcible resistance, by fabricating a means of avoiding Kemp's arrest. Nonetheless, this does not mean that Hightower aided and abetted a forcible resistance, as charged. There is no evidence that Hightower participated in Kemp's forcible act "either before or at the time the criminal act [was] committed." Kaminski v. United States, 460 F.2d 996, 998 (5th Cir. 1972).

Kemp contends that the instructions were defective for failure (1) to define "forcibly" as an essential element of the offense and (2) to specify that the agent must be "engaged in the performance of his officeal duties." Since this contention is raised for the first time on appeal, see Fed.R.Crim.P. 30,[2] we review the asserted defect only to determine whether it rises to the level of plain error. See Fed.R.Crim.P. 52(b); United States v. Helms, 467 F.2d 1085 (5th Cir. 1972). And we do not think it does so here. Rather than elaborate on the terms used in the statute, the court, in effect, simply read the statute as invoked in the indictment.[3] The instruction plainly included the word "forcibly" and the requirement that the agent be "engaged in the performance of his official duties." We think the language of the statute is understandable to the man on the street and needs no elaboration. See Tarvestad v. United States, 418 F.2d 1043, 1048 (8th Cir. 1969); Rimerman v. United States, 374 F.2d 251, 254–255 (8th Cir. 1967). Even so, the failure to elaborate here does not amount to plain error.

As to Kemp, the judgment is affirmed. As to Hightower and King, it is reversed and remanded with directions to dismiss.

2. Fed.R.Crim.P. 30 provides in pertinent part:
"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

3. The court's instructions, in pertinent part, were as follows:
"There are two essential elements which must be proven by the Government beyond a reasonable doubt before any Defendant can be convicted under Count One. First the act or acts of forcibly assaulting, resisting, opposing, impeding or intimidating or interferring [sic] with an officer of the United States Department of Interior or while such officer was engaged in the performance of his official duties as charged. Secondly, doing such act willfully or to aid and abet in committing the offense.
Now, the word "willfully" means that the act was committed voluntarily or purposely with the specific intent to do something the law forbids, that is to say with bad purpose to either disobey or disregard the law, or to fail to do something that the law requires with the specific intent to either disobey or disregard the law."