# United States Court of Appeals for the Fifth Circuit

No. 20-61098

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2025

Lyle W. Cayce
Clerk

DELROY ANTHONY MCLEAN,

*Petitioner*,

*versus*

PAMELA BONDI, U.S. ATTORNEY GENERAL,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A042 256 103

Before RICHMAN, HAYNES, and GRAVES, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:

Delroy Anthony McLean petitions this court for review of the Board of Immigration Appeals' (BIA) final order of removal affirming his removability and ineligibility for cancellation of removal based on his previous conviction for an aggravated felony. McLean argues that his previous conviction is not an aggravated felony and that the BIA consequently erred in concluding he was subject to removal and ineligible for cancellation of removal. We deny McLean's petition for review.

No. 20-61098

## I

Delroy Anthony McLean is a native and citizen of Jamaica. He was lawfully admitted to the United States as a permanent resident. After being admitted, McLean was convicted under 18 U.S.C. § 115(a)(1) for influencing a federal official by threat and was sentenced to 41 months in prison. He was then placed in removal proceedings pursuant in relevant part to 8 U.S.C. § 1227(a)(2)(A)(iii), under which an alien may be deported if convicted of an aggravated felony after admission.[1] McLean contested removal before an immigration judge (IJ), arguing that the offense for which he was convicted was not an aggravated felony. He argued alternatively for cancellation of removal. The IJ held that McLean was convicted of an aggravated felony and as a result was removable and ineligible for cancellation of removal. On appeal, the BIA affirmed. McLean now petitions this court for review.

Having filed his petition for review pro se, McLean has also submitted a motion for appointment of counsel, which remains outstanding. That motion is denied because McLean has not shown that his case presents exceptional circumstances warranting appointment of counsel.[2]

McLean's argument, liberally construed,[3] is that the BIA erred in its final order of removal affirming the IJ's determination that his conviction under 18 U.S.C. § 115(a)(1) for influencing a federal official by threat,

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii); INA § 237(a)(2)(A)(iii).

[2] *See Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (recognizing that a trial court need not appoint counsel for an indigent plaintiff asserting a § 1983 claim unless the case presents "exceptional circumstances"); *see also Nogales v. Garland*, No. 21-60665, 2022 WL 3334491, at *1 (5th Cir. Aug. 12, 2022) (applying *Ulmer* in the context of a petition for review of a BIA decision to deny petitioner's motion for appointment of counsel).

[3] *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983) ("[Petitioner] is a pro se litigant. It is established that his pleadings, therefore, are to be liberally construed.").

No. 20-61098

resulting in a 41-month sentence, was an aggravated felony. This court reviews de novo the legal question of whether an offense constitutes an aggravated felony.[4]

## II

We first consider whether McLean is removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[5] The term "aggravated felony" is defined in 8 U.S.C. § 1101 and includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."[6] A "crime of violence" is in turn defined in 18 U.S.C. § 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[7] We must therefore determine whether the crime of which McLean was convicted meets this definition. We do not consider subsection (b) of 18 U.S.C. § 16 (the so-called "residual clause") because the Supreme Court has held that it is unconstitutionally vague.[8]

McLean was convicted under 18 U.S.C. § 115(a)(1), which provides:

(a)(1) Whoever—

---

[4] *Rodriguez v. Holder*, 705 F.3d 207, 210 (5th Cir. 2013) ("'[W]hether an offense constitutes an aggravated felony is a purely legal' question, which we review de novo." (alteration in original) (quoting *Patel v. Mukasey*, 526 F.3d 800, 802 (5th Cir. 2008))).

[5] 18 U.S.C. § 1227(a)(2)(A)(iii).

[6] 8 U.S.C. § 1101(a)(43)(F).

[7] 18 U.S.C. § 16(a).

[8] *See Sessions v. Dimaya*, 584 U.S. 148, 151 (2018).

3

No. 20-61098

> (A) assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap or murder a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under section 1114 of this title; or
>
> (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,

with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).[9]

Subsection (b) specifies the punishment ranges, and in relevant part provides:

> (1) The punishment for an assault in violation of this section is—
>
> (A) a fine under this title; and
>
> (B)(i) if the assault consists of a simple assault, a term of imprisonment for not more than 1 year;
>
> (ii) if the assault involved physical contact with the victim of that assault or the intent to commit another felony, a term of imprisonment for not more than 10 years;
>
> (iii) if the assault resulted in bodily injury, a term of imprisonment for not more than 20 years; or

---

[9] 18 U.S.C. § 115(a)(1).

(iv) if the assault resulted in serious bodily injury (as that term is defined in section 1365 of this title, and including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) or a dangerous weapon was used during and in relation to the offense, a term of imprisonment for not more than 30 years.

. . .

(4) A threat made in violation of this section shall be punished by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years.[10]

If a statute defines only one crime, we determine whether that crime is "categorically" a crime of violence.[11] That means that in the present case, we would determine whether the offense for which McLean was convicted, regardless of the means of committing it, "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" within the meaning of 18 U.S.C. § 16(a).

However, a statute may define more than one crime.[12] That determination turns on whether the statute of conviction is divisible.[13] A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes."[14] For example, if a statute "prohibit[s] 'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to

---

[10] *Id.* § 115(b)(1), (4).

[11] *See Mathis v. United States*, 579 U.S. 500, 504-05 (2016) (discussing the application of the categorical approach).

[12] *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

[13] *Id.*

[14] *Mathis*, 579 U.S. at 505.

No. 20-61098

create two different offenses, one more serious than the other," the statute is divisible.[15] If faced with a divisible statute, the court must "figur[e] out which of the alternative elements listed [in the statute] . . . was integral to the defendant's conviction."[16] To do this, the court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of."[17]

Section 115(a)(1) lists several alternative ways to violate the statute, but that does not necessarily mean the statute is divisible. Nevertheless, we know that § 115 is divisible because subsection (b) lists different punishments for different conduct. These statutory alternatives carry punishments varying in severity and thereby create different offenses.

As the statute is divisible, we must determine which specific offense was McLean's crime of conviction. We may look to limited documents in the record to determine of which crime, with what elements, McLean was convicted.[18] The indictment charges McLean with "threaten[ing] to assault." The verdict and judgment both contain the charge of "Influencing a Federal Official by Threat" which corresponds to § 115(a)(1)(B). The sentencing section of the statute states that threats to kidnap or murder may be punished with a prison sentence of no more than ten years while a threat to assault may result in a sentence of no more than six years.[19] McLean was sentenced to 41 months of incarceration. Accordingly, McLean appears to

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 505-06.

[18] *Id.*

[19] 18 U.S.C. §115(a)(4).

have been convicted of, at the very least, the crime of influencing a federal official by threatening assault. Since that is the least culpable means of violating § 115 by a threat, we consider whether it is "an offense that has as an element the . . . threatened use of physical force against the person or property of another,"[20] within the meaning of 18 U.S.C. § 16(a).

The term "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person."[21] McLean was sentenced to 41 months of imprisonment, which means that McLean was not *convicted* of "simple assault" since he could have been sentenced to no more than one year for that offense.[22] His offense was threatened assault, not "simple assault." The only provision of § 115(b) under which McLean could have been sentenced for *threatened* assault was § 115(b)(4), which provides that "imprisonment for a threatened assault shall not exceed 6 years."[23]

To the extent McLean argues that his conviction was not based on actual physical force, that argument ignores the text of the statute, which explicitly includes threats.[24] McLean therefore was removable under § 1227(a)(2)(A)(iii).

The BIA opinion assumes the statute is not divisible. It instead applies the categorical approach to analyzing the statute without identifying the

---

[20] *Id.* § 16(a).

[21] *Johnson v. United States*, 559 U.S. 133, 140 (2010).

[22] *See* 18 U.S.C. § 115(b)(1)(B)(i).

[23] *Id.* § 115(a)(4).

[24] *See id.* § 115(a)(1).

specific crime of which McLean was convicted.[25] While it appears that the BIA erred in this respect, we may still uphold its decision if "there is no realistic possibility that, absent the error[], the . . . BIA would have reached a different conclusion."[26] Here, the erroneous application of the categorical approach resulted in substantially the same analysis as to the relevant sections of the statute—the BIA reviewed 18 U.S.C. § 115(a)(1) as it would have had it identified the specific offense. The error committed was therefore harmless.[27]

## III

Under § 1229b(a)(3), a deportable alien having been "convicted of any aggravated felony" is ineligible for cancellation of removal.[28] For the same reason that McLean is removable, he is ineligible for cancellation of removal under § 1229b(a)(3).

\* \* \*

We DENY McLean's motion for appointment of counsel and DENY his petition for review of the BIA's final order of removal.

---

[25] *See, e.g.*, *Mathis v. United States*, 579 U.S. 500, 500 (2016) (setting forth that the categorical approach is appropriate when "a statute defines only a single crime with a single set of elements").

[26] *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010) (quoting *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005)).

[27] *See id.*

[28] 18 U.S.C. § 1229b(a)(3).

No. 20-61098

Priscilla Richman, *Circuit Judge*, concurring:

I fully concur in the panel's opinion.  I write to provide additional analysis.

The term "aggravated felony" is defined in 8 U.S.C. § 1101 and includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."[1]  A "crime of violence," as defined in 18 U.S.C. § 16(a), is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[2]

The indictment under 18 U.S.C. § 155(a)(1) alleges that McLean threatened an Immigration Judge by threatening to "'F**k up' the judge, and to 'bash in her f**king head.'"  A jury found McLean guilty.  To those unfamiliar with federal criminal law, that would seem to mean that McLean was convicted of a crime that had as an element the "threatened use of physical force against the person or property of another."[3]  However, courts are required to look beyond *how* the offense was actually committed and instead must determine whether the statute at issue *categorically* requires proof of "the use, attempted use, or threatened use of physical force against the person or property of another,"[4] which means that the statute requires proof of that element in *every* case.  This is the application of what is known as the categorical approach.

---

[1] 8 U.S.C. § 1101(a)(43)(F) (footnote omitted).

[2] 18 U.S.C. § 16(a).

[3] *See id.*

[4] *Id.*

No. 20-61098

The Supreme Court's decision in *United States v. Taylor*[5] (among others) explains how courts are to apply the categorical approach to determine if a person has been convicted of an aggravated felony:

> [A]nswering [whether the federal felony at issue "has as an element the use, attempted use, or threatened use of physical force"] does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force.[6]

McLean was convicted under 18 U.S.C. § 115(a)(1)(B),[7] which provides:

> Whoever-- . . .
>
> > (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,
>
> with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of

---

[5] 596 U.S. 845 (2022).

[6] *Id.* at 850 (quoting 18 U.S.C. § 924(c)(3)(A)).

[7] *See United States v. McLean*, 891 F.3d 1308, 1309 (11th Cir. 2018) (affirming McLean's conviction for "violating 18 U.S.C. § 115(a)(1)(B) by 'threaten[ing] to assault' an immigration judge 'with the intent to impede, intimidate, or interfere' with that judge 'while [she was] engaged in the performance of official duties' (i.e., during a bond hearing)").

No. 20-61098

the performance of official duties, shall be punished as provided in subsection (b).[8]

Under subsection (b), the punishment for "[a] threat made in violation of this section shall be punishable by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years."[9] McLean was sentenced to 41 months of imprisonment.

We must therefore determine whether "threaten[ing] to assault"[10] under the circumstances set forth in § 115(a)(1)(B), has as an element "the threatened use of physical force against the person or property of another."[11]

The Supreme Court's decision in *Johnson v. United States* is the seminal case construing the term "physical force."[12] While it construed 18 U.S.C. § 924(e)(2)(B)(i), rather than § 16(a), the texts of these two statutes are very similar.[13] I consider *Johnson* and more recent Supreme Court

---

[8] 18 U.S.C. § 115(a)(1).

[9] *Id.* § 115(b)(4).

[10] *Id.* § 115(a)(1)(B).

[11] *Id.* § 16(a).

[12] 559 U.S. 133 (2010).

[13] *See* 18 U.S.C. § 924(e)(2)(B)(i):

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

No. 20-61098

decisions in more detail below. But I begin with the basic formulation the Supreme Court "settled on" in *Johnson*, which is "'force *capable* of causing physical pain or injury.'"[14] Accordingly, the inquiry in the present case is whether "assault," as used in 18 U.S.C. § 115(a), has as an element "force capable of causing physical pain or injury."

"Assault" is not defined in § 115(a), so we must determine its meaning. The term "assault" is used more than once in § 115. Section 115(a)(1)(B) provides that "[w]hoever . . . threatens to assault . . . a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under [§] 1114" has committed an offense. There are, however, four separate "assault" offenses within § 115, including the offense of "simple assault," each having different elements and differing punishments under § 115(b)(1):

> (b)(1) The punishment for an assault in violation of this section is--
>
> (A) a fine under this title; and
>
> (B)(i) if the assault consists of a simple assault, a term of imprisonment for not more than 1 year;
>
> (ii) if the assault involved physical contact with the victim of that assault or the intent to commit another felony, a term of imprisonment for not more than 10 years;

---

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . .

[14] *Stokeling v. United States*, 586 U.S. 73, 84 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

        (iii) if the assault resulted in bodily injury, a term of imprisonment for not more than 20 years; or

        (iv) if the assault resulted in serious bodily injury (as that term is defined in section 1365 of this title, and including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) or a dangerous weapon was used during and in relation to the offense, a term of imprisonment for not more than 30 years.[15]

We apply a "modified categorical approach" where "the statute of conviction encompasses multiple, divisible offenses."[16] A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes."[17] "If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."[18] As the panel's opinion notes, § 115(a)(1) is divisible because subsection (b) lists different punishments for various offenses set forth in § 115(a)(1).[19] The only provision of § 115(b) under which McLean could have been sentenced for *threatened* assault was § 115(b)(4), which provides that "imprisonment for a threatened assault shall not exceed 6 years."[20]

---

[15] 18 U.S.C. § 115(b)(1).

[16] *United States v. Carrasco-Tercero*, 745 F.3d 192, 195 (5th Cir. 2015).

[17] *Mathis v. United States*, 579 U.S. 500, 505 (2016).

[18] *Id*. at 518.

[19] *See id.* at 505, 518.

[20] 18 U.S.C. § 115(a)(4).

No. 20-61098

Documents pertaining to McLean's conviction that courts may permissibly consider in an immigration case[21] do not expressly indicate whether McLean was convicted of *threatening* (i) "simple assault," (ii) an assault that "involved physical contact," (iii) an assault that would result in "bodily injury," or (iv) an assault that would involve "serious bodily injury." We know that if McLean had actually "bashed in" the immigration judge's head, that would satisfy all the elements of each of these offenses. But again, we are looking at § 115(a) and (b) categorically to determine whether McLean's offense of "threatened assault" has as an element threatening "force *capable* of causing physical pain or injury."[22]

As to simple assault, it stands to reason that McLean was not convicted of threatening simple assault. That is because § 115 cannot reasonably be construed to mean that a person can be convicted for threatening simple assault and face a sentence of up to six years in prison under § 115(b)(4), while the maximum sentence for actually committing simple assault is one year under § 115(b)(1)(B)(i). So, (B)(i) above regarding "simple assault" is not at issue. I nevertheless consider below the meaning of "simple assault" to understand fully what "assault" means in § 115(b)(1)(B)(ii).

As to subsections (iii) and (iv), it can readily be seen that threatening either (iii) an assault that would result in "bodily injury," or (iv) an assault

---

[21] *See* 8 U.S.C. § 1229a(c)(3)(B); *see also Pereida v. Wilkinson*, 592 U.S. 224, 235 (2021) ("[T]he INA specifies particular forms of evidence that 'shall constitute proof of a criminal conviction,' including certain official records of conviction, docket entries, and attestations. These rules apply to 'any proceeding under this chapter' regardless whether the proceedings happen to involve efforts by the government to remove an alien or efforts by an alien to obtain relief." (internal citations omitted)).

[22] *See Stokeling v. United States*, 586 U.S. 73, 84 (2019).

14

that would involve "serious bodily injury" has as an element the threatened use of physical force capable of causing physical injury or pain. The focus of this appeal, therefore, is whether threatening "assault" that involves "physical contact with the victim of that assault" has as an element the threatened use of physical force capable of causing physical injury or pain.

The original (1984) version of § 115 used only the term "assault."[23] Congress did not include "simple assault" in § 115 until 1994, when it amended the statute which, at that time, cross-referenced 18 U.S.C. § 111 for punishments.[24] Effective January 2008, Congress amended § 115(b) to include "simple assault" directly in a punishment provision of § 115, rather than by cross-referencing § 111.[25]

The term "simple assault" is not defined in § 115 or elsewhere in the federal statutes, but the common law generally defined assault as an intentional tort that did not require physical contact with another person but did require an attempt or threat to do bodily harm or place another in fear of bodily harm. For example, an early (18th century) dictionary defined assault as "[a]n attempt or offer, with force and violence, to do a corporal hurt to another; as by striking at him, with or without a weapon."[26] Blackstone defined assault as "an attempt or offer to beat another, without touching him:

---

[23] Act of October 12, 1984, Pub. L. No. 98-473, § 1008, 98 Stat. 1837, 2140 (1984).

[24] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 320101, 108 Stat. 1796, 2018 (1994) (by inserting "where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both").

[25] Court Security Improvement Act of 2007, Pub. L. 110-177, § 208, 121 Stat. 2534, 2538 (2008).

[26] Giles Jacob, *The Law-Dictionary* 80 (1797).

as if one lifts up his cane, or his fist, in a threatening manner at another; or strikes at him, but misses him."[27]

When Congress enacted § 115(a) in 1984,[28] Black's Law Dictionary defined "assault" as "[a]ny willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do, and any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm."[29]

In *United States v. Ramirez*,[30] our court had occasion to address the meaning of "simple assault" and "assault" as used in 18 U.S.C. § 111,[31] before it was amended in 2008 at the same time § 115 was amended.[32] We concluded that "simple assault" should be given its meaning under the common law and accordingly, that the offense of "simple assault" "did not involve any physical contact."[33] We said that "[a]t common law, 'simple assault' was, of course, an 'attempted battery' or the 'placing of another in reasonable apprehension of a battery.'"[34] For this latter proposition, we cited LaFave & Scott, Substantive Criminal Law § 7.16 (1986). When that learned treatise is consulted, it can be seen that what we termed "simple assault" in *Ramirez* had as an element the intent to use and an attempt to use

---

[27] 3 William Blackstone, Commentaries *74.

[28] Act of October 12, 1984, Pub. L. 98-473, 98 Stat. 2140.

[29] *Assault*, Black's Law Dictionary (5th ed. 1979).

[30] 233 F.3d 318 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton,* 535 U.S. 625 (2002).

[31] *Id.* at 320-22.

[32] Court Security Improvement Act of 2007, Pub. L. 110-177, § 208, 121 Stat. 2534 (2008).

[33] *Ramirez*, 233 F.3d at 322.

[34] *Id*. at 321-22 (citing LaFave & Scott, *Substantive Criminal Law* § 7.16 (1986)).

physical force capable of causing physical injury or pain or threatening to use physical force capable of causing physical injury.

Under the formulations of assault by LaFave and Scott in the 1986 treatise, threatening "assault" would have as an element the threatened use of "physical force" as defined by *Johnson*. In discussing assault, LaFave and Scott considered state statutes, and mainly focused on "modern codes," concluding that:

> The principal question concerning the crime of assault has been whether it is to be limited to the situation of the attempted battery (requiring an actual intent to cause a physical injury, not just an apprehension of such an injury); or whether it should include, in addition, the civil-assault situation of the intentionally-caused apprehension of injury.[35]

The treatise first considered at some length "Assault as Attempted Battery."[36] For our purposes, the key assessments were that

> [1] assault of the attempted-battery sort requires an intent to commit a battery, i.e., an intent to cause physical injury to the victim. Thus in those jurisdictions where an assault is limited to an attempted battery, an intent merely to frighten, though accompanied by some fear-producing act like pointing an unloaded gun at the victim, will not suffice. And since an intent to injure is required for an attempted battery, recklessness or negligence which comes close to causing injury—as where A, driving his car recklessly, just misses striking B—will not do for an assault.[37]

---

[35] LaFave & Scott, *supra*, § 7.16.

[36] *Id.* § 7.16(a).

[37] *Id.* (footnote omitted).

and

> [2] In some states by statute or case law there is the additional requirement for assault (i.e., in addition to the requirement of an attempted battery) that the assaulter have a 'present ability' to commit a battery.[38]

LaFave and Scott's treatise then considered at some length "Assault as Intentional Scaring."[39]  We again consider the assessments key to our present task:

> As we have seen, many jurisdictions have extended the scope of the crime of assault to include, *in addition to* (not as an alternative to) the attempted-battery type of assault, the tort concept of the civil assault, which is committed when one, with intent to cause a reasonable apprehension of immediate bodily harm (though not to inflict such harm), does some act which causes such apprehension.  For this type of assault, a present ability to inflict injury is clearly unnecessary.[40]

This formulation of "assault" is the equivalent of threatening physical force capable of causing pain or injury.

Years earlier, in 1958, the Supreme Court construed the predecessor to 18 U.S.C. § 111, which was former 18 U.S.C. § 254, in *Ladner v. United States*. [41]  The Court said in *Ladner* that "an assault is ordinarily held to be

---

[38] *Id.* (footnotes omitted).

[39] *Id.* § 7.16(b).

[40] *Id.* (footnote omitted).

[41] 358 U.S. 169 (1958); *id.* at 177 n.4 (observing that 18 U.S.C. § 111 was the "present recodification" of former 18 U.S.C. § 254); *id.* at 170 n.1 (quoting former 18 U.S.C. § 254 (1940), as providing: "Whoever shall forcibly resist, oppose, impede, intimidate, or interfere with any person * * * (if he is a federal officer designated in s 253) while engaged in the performance of his official duties, or shall assault him on account of

committed merely by putting another in apprehension of harm whether or not the actor actually intends to inflict or is capable of inflicting that harm." [42]

So, utilizing LaFave and Scott's understanding of the various formulations of "assault," or *Ladner*'s formulation, threatening "assault" as used in § 115(b)(1)(B)(ii), would categorically include as an element threatening the use of physical force that is capable of causing physical pain or injury to the victim.

Nevertheless, that is not the end of our inquiry. We must also consider how courts have actually applied § 115(b)(1)(B)(ii) or virtually identical assault statutes. A starting point is our own decision in *Ramirez*.[43]

## I

In *Ramirez*, a direct criminal appeal,[44] we did not consider whether an offense, very similar to that set forth in § 115(b)(1)(B)(ii), was a "crime of violence." We construed the statutory phrases "forcible assault" "inolv[ing] physical contact with the victim" (meaning "forcible assault" other than "simple assault"), as used in the then-extant version of 18 U.S.C. § 111.[45]

---

the performance of his official duties, shall be * * * imprisoned not more than three years * * *; and whoever, in the commission of any of the acts described in this section, shall use a deadly or dangerous weapon shall be * * * imprisoned not more than ten years * * *.").

[42] *Id.* at 177 (citing William Livesey Burdick, *Law of Crime* § 342 (1946); William Lawrence Clark & William L. Marshall, *Law of Crimes* § 10.16 (1958); Justin Miller, *Handbook of Criminal Law* § 99 (1934)).

[43] *United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000).

[44] *Id.* at 321.

[45] *Id.* at 322.

No. 20-61098

We held that a prisoner had committed "forcible assault" when he "hurled" a mixture of feces and urine at a prison guard.[46]  The feces and urine struck the officer "all over" his body, from the neck down.[47]  We first concluded that since there was physical contact with the victim, the defendant's conduct was more than "simple assault" within the meaning of § 111, and since it did "not involve a deadly weapon or bodily injury," it came under the provision that pertained to assault with "physical contact" that at the time carried a maximum sentence of three years in prison.[48]  We concluded that this conduct was "physical but non-injurious assault" punishable under the provision at issue in the version of § 111 in existence in 2000.[49]  We cited with approval decisions from this and other circuits that had held various types of conduct "constitute[d] assault on a federal officer in violation of 18 U.S.C. § 111."[50]

A question that must be answered is whether hurling a mixture of feces and urine that covers the victim's body below the neck is the use of physical force capable of causing physical injury or pain.  Whether other instances of physical contact federal courts have held constituted "assault"

---

[46] *Id.*

[47] *Id.* at 320.

[48] *Id.* at 323.

[49] *Id.* at 322.

[50] *Id.* (citing *United States v. Hernandez*, 921 F.2d 1569, 1576 (11th Cir. 1991) (poking IRS agent in the chest in a threatening manner is assault on a federal officer); *United States v. Fernandez*, 837 F.2d 1031, 1035 (11th Cir. 1988) (bumping assistant United States Attorney while repeatedly advising the attorney to "watch his back" constitutes assault on a federal officer); *United States v. Sommerstedt*, 752 F.2d 1494 (9th Cir. 1985) (holding that the use of any force whatsoever can be an assault on a federal officer); *United States v. Hightower*, 512 F.2d 60, 61 (5th Cir. 1975) (grabbing a federal wildlife agent's jacket was assault on a federal officer); *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974) (spitting in the face of a mail carrier was sufficient for assault on a federal officer)).

No. 20-61098

were capable of causing physical injury must also be ascertained.[51]   A close examination of Supreme Court decisions that have expounded upon *Johnson* is necessary to answer those questions.

## II

In *Johnson*, the Supreme Court made the pointed observation that the phrase "physical force" is used in the context of "violent felon[ies]" under § 924(e)(2)(B)(i), and of a "crime of violence" under § 16(a).[52] The *Johnson* decision quoted a passage from *Leocal v. Ashcroft*,[53] which had construed § 16(a) and had emphasized that the interpretation of "physical force" must occur in the context of determining the meaning of "crime of violence":

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'  The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes. . . .[54]

Subsequently, in *Stokeling v. United States*,[55] the Supreme Court again considered the meaning of  use of "physical force," this time in deciding whether "a robbery offense that has as an element the use of force sufficient to overcome a victim's resistance necessitates the use of 'physical force.' within the meaning of the Armed Career Criminal Act (ACCA), 18

---

[51] *See supra* note 54.

[52] *Johnson v. United States*, 559 U.S. 133, 140 (2010).

[53] 586 U.S. 73 (2019).

[54] 559 U.S. at 140.

[55] 586 U.S. 73 (2019).

U.S.C. § 924(e)(2)(B)(i)."[56] In concluding that it did, the Court explained that its decision in *Johnson* had held that "force" as used in the ACCA did not "encompass[] even the 'slightest offensive touching.'"[57] The *Johnson* decision had held that a "Florida battery law criminalizing '*any* intentional physical contact,'... did not require the use of 'physical force.'"[58] "By contrast," the Court said in *Stokeling*, "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*, and 'suggest[s] a degree of power that would not be satisfied by the merest touching.'"[59]

The Supreme Court further explained in *Stokeling* that "*Johnson*'s actual holding" was "that common-law battery does not require 'force capable of causing physical pain or injury,'" but that *Johnson* "also defined 'violence' as '*unjust or improper* force.' "[60] The *Stokeling* decision observed that "the common law similarly linked the terms 'violence' and 'force'" and that "[o]vercoming a victim's resistance was *per se* violence against the victim, even if it ultimately caused minimal pain or injury."[61]

The *Stokeling* decision traced the history of the ACCA's use-of-"physical force" provision.[62] "As originally enacted, ACCA prescribed a 15–year minimum sentence for any person who received, possessed, or

---

[56] *Id.* at 75.

[57] *Id*. at 82 (citing *Johnson*, 559 U.S. at 138).

[58] *Id*. (citing *Johnson*, 559 U.S. at 140).

[59] *Id*. at 83 (quoting *Johnson*, 559 U.S. at 139).

[60] *Id*. (quoting *Johnson*, 559 U.S. at 140).

[61] *Id*. at 83-84 (citing 2 W. Russell, *Crimes and Indictable Misdemeanors* 68 (2d ed. 1828)).

[62] *Id.* at 77-80.

No. 20-61098

transported a firearm following three prior convictions 'for robbery or burglary.'"[63] "Robbery was defined in relevant part as 'any felony consisting of the taking of the property of another from the person or presence of another *by force or violence*.'"[64] "Under the common law, it was robbery 'to seize another's watch or purse, and use sufficient force to break a chain or guard by which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him.'"[65] "Similarly, it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin."[66]

The Court explained in *Stokeling* that Congress amended the ACCA in 1986 to replace the enumerated offenses, including robbery, with the use of "physical force" provision.[67] The Court reasoned, "[b]y replacing robbery as an enumerated offense with a clause that has 'force' as its touchstone, Congress made clear that 'force' retained the same common-law definition that undergirded the original definition of robbery adopted a mere two years earlier."[68]

In *Stokeling*, the Supreme Court addressed a question left unanswered in *United States v. Castleman*,[69] which was "whether, under *Johnson*, conduct that leads to relatively minor forms of injury—such as 'a

---

[63] *Id*. at 77 (citing 18 U.S.C.A. § 1202(a) (Supp. II 1982)).

[64] *Id*. (citing 18 U.S.C.A. § 1202(c)(8) (Supp. II 1982)).

[65] *Id*. at 78 (quoting W. Clark & W. Marshall, *Law of Crimes* 554 (H. Lazell ed., 2d ed. 1905)).

[66] *Id*. (citing W. Russell, *Crimes and Indictable Misdemeanors* 68 (2d ed. 1828)).

[67] *Id*. at 79-80.

[68] *Id*. at 80.

[69] 572 U.S. 157 (2014).

cut, abrasion, [or] bruise'—'necessitate[s]' the use of 'violent force.'"[70] The Court noted that only JUSTICE SCALIA's concurring opinion in *Castleman* had addressed that question, and "he concluded that force as small as 'hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling . . . satisfied *Johnson*'s definition."[71] JUSTICE SCALIA reasoned that "'[n]one of those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury.'"[72] The Court agreed with JUSTICE SCALIA, saying, "[t]his understanding of 'physical force' is consistent with our holding today that force is "capable of causing physical injury" within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance. Such force satisfies ACCA's elements clause."[73]

Importantly, the Supreme Court in *Stokeling* reiterated that in *Johnson*, it settled on "force capable of causing physical pain or injury."[74] But it emphasized that "[c]apable" means "susceptible" or "having attributes . . . required for performance or accomplishment" or "having traits conducive to or features permitting."[75] The Court explained that "*Johnson* thus does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only

---

[70] *Stokeling v. United States*, 586 U.S. 73, 85 (2019) (quoting *Castleman*, 572 U.S. at 170).

[71] *Id*. (quoting *Castleman*, 572 U.S. at 182 (SCALIA, J., concurring)).

[72] *Id*. (quoting *Castleman*, 572 U.S. at 182).

[73] *Id*.

[74] *Id.* at 84 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010).

[75] *Id.* (quoting *Capable*, Webster's Ninth New Collegiate Dictionary 203 (1983)); *see also Capable*, Oxford American Dictionary and Thesaurus 180 (2d ed. 2009) ("[H]aving the ability or quality necessary to do.").

No. 20-61098

potentiality."[76]  It declared that "[e]valuating the statistical probability that harm will befall a victim is not an administrable standard under our categorical approach."[77]  It further declared, "[w]e decline to impose yet another indeterminable line-drawing exercise on the lower courts."[78]

The Supreme Court has explained post-*Johnson* that physical force can be brought to bear on a victim without actually physically touching them.  In *United States v. Castleman*,[79] the Court engaged in a discussion of whether poisoning someone would be a use of physical force for purposes of the definition of a crime of violence.[80]  The Court said this:

> "[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam.  It is impossible to cause bodily injury without applying force in the common-law sense.
>
> Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument."  But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victims drink."  The "use of force" in Castleman's example is not the act of

---

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] 572 U.S. 157 (2014).

[80] *Id.* at 170-71.

No. 20-61098

"sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.[81]

This precedent informs the analysis of our decision in *Ramirez* and decisions from other circuits.

## III

The question remains: whether throwing a mixture of feces and urine at someone and covering their body below the neck with it, or threatening to do so, is to commit an assault that is a crime of violence. The answer is "yes" to both questions.

The use of such force has the "potentiality" to cause injury.[82] Feces is a contaminated substance and urine can also contain bacteria and disease-spreading pathogens even though most urine may not be contaminated in this way. Throwing feces or urine onto someone has the *potential* to cause physical injury. In *Stokeling*, the Supreme Court expressly rejected an argument that the use of physical force or threatened use of physical force requirement means that the force must be "reasonably expected to cause pain or injury."[83] The Court made plain in *Stokeling*, as mentioned previously, that "[e]valuating the statistical probability that harm will befall a victim is not an administrable standard under our categorical approach."[84] The Court reasoned that "[c]rimes can be committed in many different

---

[81] *Id.* at 170 (footnote omitted) (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.2(b) (2d ed. 2003).

[82] *See Stokeling v. United States*, 586 U.S. 73, 84 (2019).

[83] *Id*. at 84.

[84] *Id*.

ways, and it would be difficult to assess whether a crime is categorically likely to harm the victim, especially when the statute at issue lacks fine-tuned gradations of 'force.'"[85]  To repeat, the Court declared, "[w]e decline to impose yet another indeterminable line-drawing exercise on the lower courts."[86]

Other authorities confirm this understanding of § 115(a)(1)(B).  The First Circuit approved a jury instruction that defined "threat" in § 115(a)(1)(B) as "a statement that expresses an intent to *inflict bodily harm on someone.*"[87]  The Seventh Circuit's pattern jury instructions note that threats under § 115(a)(1)(B) are a "serious expression of an intention to *inflict bodily harm upon* or take the life of another"[88] and define "assault" under § 115(a)(1)(B) as an act that "intentionally attempt[s] or threaten[s] to *inflict bodily injury* upon another person."[89]

The Supreme Court's opinions in *Delligatti*[90] and *Stokeling*[91] reinforce the conclusion that § 115(a)(1)(B) is a "crime of violence."  *Stokeling* holds that Florida robbery is a violent felony because "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*, and 'suggest[s] a degree of power that would not

---

[85] *Id*. at 84-85.

[86] *Id*. at 85.

[87] *United States v. Fulmer*, 108 F.3d 1486, 1494-95 (1st Cir. 1997) (emphasis added).

[88] The William J. Bauer Pattern Crim. Jury Instructions of the Seventh Circuit, Thompson Reuters 196 (2023), https://www.ca7.uscourts.gov/assets/pdf/Criminal_Jury_Instructions.pdf (emphasis added).

[89] *Id.* at 198, 861 (emphasis added) (defining assault).

[90] *Delligatti v. United States*, 603 U.S. 423 (2025).

[91] *Stokeling v. United States*, 586 U.S. 73 (2019).

be satisfied by the merest touching.'"[92] "[I]t is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'"[93] As a result, "minimal force" or a "small degree of force" can still be "sufficiently violent" even if the force results in only "minimal pain or injury."[94] Similar logic applies to threats of assault under § 115(a)(1)(B). To be convicted of threatening to assault a federal official under § 115(a)(1)(B), a defendant must have the "intent to impede, intimidate, or interfere with" official duties or the "intent to retaliate against" the official.[95] The requirement that the defendant intends to "impede, intimidate, or interfere with" or "retaliate against" a United States official suggests a force threshold similar to that of robbery: to be convicted under § 115(a), the defendant must intend to apply or threaten sufficient force to "overcome"[96] or otherwise influence the official. This "suggest[s] a degree of power that would not be satisfied by the merest touching."[97]

Decisions from other circuits do not undercut the conclusion that § 115(b)(1)(B)(ii) categorically requires proof that the defendant threatened to use physical force that was capable of causing physical pain or injury. In *United States v. Frizzi*,[98] a United States Postal Service mail carrier and the defendant were in their respective vehicles when the defendant pulled

---

[92] *Id.* at 83 (alteration in original) (quoting *Johnson v. United States*, 559 U.S. 133, 139 (2010)).

[93] *Id.* (quoting *Johnson*, 559 U.S. at 140).

[94] *Delligatti*, 604 U.S. at 432-33 (quoting *Stokeling*, 586 U.S. at 83).

[95] 18 U.S.C. § 115(a)(1)(B).

[96] *Stokeling*, 586 U.S. at 85.

[97] *Id.* at 83 (alteration in original) (quoting *Johnson*, 559 U.S. at 139).

[98] 491 F.2d 1231 (1st Cir. 1974).

alongside and uttered an "obscene epithet."[99]  The mail carrier told the defendant to "shut his mouth," and the defendant "spat in [the mail carrier's] face.[100]  The men then exited their vehicles, and the defendant knocked the mail carrier down, cutting his chin.[101]  The First Circuit held that "[w]e do not think it could be ruled that spitting in the face is not forcible assault, or, more exactly, a battery falling within the statutory description 'forcibly assaults, resists, opposes, impedes, intimidates or interferes.' Although minor, it is an application of force to the body of the victim, a bodily contact intentionally highly offensive."[102]  That court also reasoned that "fear" was not "necessary to make a battery actionable under the statute."[103]  However, the First Circuit affirmed the conviction under § 111 on the alternate basis that the jury was free to conclude that the mail carrier was pursuing his official duties when he exited his vehicle and was physically assaulted (knocked to the ground) by the defendant.[104]

In *United States v. Masel*,[105] the defendant was convicted under 18 U.S.C. § 351(e) of spitting on a member of Congress.[106]  It appears that this was a misdemeanor conviction because the statutory maximum penalty for "assault" was imprisonment for not more than one year, and Masel was

---

[99] *Id.* at 1231.

[100] *Id.*

[101] *Id.* at 1232.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] 563 F.2d 322 (7th Cir. 1977) *cert. denied*, 445 U.S. 927 (1978).

[106] *Id.* at 323.

sentenced to fifteen days in prison.[107]  In any event, saliva is in the same category as feces and urine.  It has the potential to cause injury.  Additionally, one has to be in fairly close proximity to the victim in order to credibly threaten spitting on her.  A threat to spit on someone comes within the definition of a crime of violence.[108]

McLean argues that § 115(a)(1) is not a crime of violence because it may be committed recklessly.  This is incorrect, as 18 U.S.C. § 115(a)(1) requires "intent to impede, intimidate, or interfere."[109]  Additionally, we have explained that the statute requires that "the defendant intentionally communicated the threat."[110]  Accordingly, the crime McLean committed cannot be carried out with "a less culpable mental state than purpose or knowledge."[111]

McLean's conviction qualifies as a "crime of violence" under 18 U.S.C. § 16(a) and is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F).[112]  McLean therefore was removable under 8 U.S.C. § 1227(a)(2)(A)(iii).[113]

---

[107] *Id.*

[108] *See United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir.1974).

[109] 18 U.S.C. § 115(a)(1).

[110] *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997); *see also United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005) ("Moreover, by its express language, section 115(a)(1)(B) contains a specific intent element.").

[111] *Borden v. United States*, 593 U.S. 420, 423-24 (2021) (plurality opinion) (holding that a crime capable of being committed with a "a less culpable mental state than purpose or knowledge," such as "recklessness," cannot qualify as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)).

[112] 18 U.S.C. § 16(a); 8 U.S.C. § 1101(a)(43)(F).

[113] 8 U.S.C. § 1227(a)(2)(A)(iii).